1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                    **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   LYNN LYONS, on behalf of herself and          **CASE NO. 08-CV-02047-H (CAB)**
     all others similarly situated,
12                                                  **ORDER GRANTING MOTION**
                                       Plaintiff,   **TO DISMISS & DENYING**
13           vs.                                    **MOTION TO STAY**

14   COXCOM, INC., dba COX
     COMMUNICATIONS, INC.; COX
15   ENTERPRISES, INC.; and DOES 1
     through 250,
16
                                      Defendant.
17

18           On November 4, 2008, Plaintiff Lynn Lyons ("Lyons") filed a class action complaint

19   against Defendant Coxcom, Inc., doing business as Cox Communications, Inc. ("Cox"). (Doc.

20   No. 1, Compl.)  Defendant filed a motion to dismiss the complaint and a request for judicial

21   notice on December 15, 2008.  (Doc. Nos. 13–15.)  On January 20, 2009, Plaintiff filed her

22   response in opposition and a request for judicial notice.  (Doc. Nos. 22–23.)  On February 2,

23   2009, Defendant filed its reply.   (Doc. No. 30.)   The Court determines this matter is

24   appropriate for resolution without oral argument and submits it on the papers pursuant to Local

25   Rule 7.1(d)(1).

26                                          **Background**

27           Plaintiff instituted this class action against Cox, an internet service provider in

28   California, 21 other states, and the District of Columbia. (Compl. ¶6.)  Plaintiff upgraded her

internet service to Cox's high speed internet premier with PowerBoost package in order to gain faster uploads and downloads to and from the internet.  (Id. ¶28.)  Plaintiff alleges that Cox advertises "blazing fast" internet with PowerBoost speeds up to 20 Mbps for Premier Tier and 12 Mbps for Preferred Tier customers.  (Id. ¶¶1, 27.)  She alleges Cox also advertises that with PowerBoost "you can now enjoy doubled upload speeds and up to 33% faster downloads." (Id. ¶27.)  Plaintiff alleges that Cox breaches its promise to provide "blazing fast" speeds by severely limiting the speed of and/or stopping altogether certain peer-to-peer ("P2P") file sharing internet applications by transmitting unauthorized hidden messages known as "reset packets" to the computers of customers who utilize such applications.  (Id. ¶¶2–3.)  These reset packets tell the computers to stop communicating via such applications, resulting in blocked or severely impeded file sharing.  (Id. ¶¶3, 33.)  Plaintiff alleges that she has performed her obligations under the terms of the agreement by paying her monthly charges and that she did not authorize Cox to send hidden messages in order to block or impede her use of P2P applications.  (Id. ¶¶31, 34.)

As a result of this alleged conduct by Cox, Plaintiff brings this suit for: (1) breach of contract; (2) violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §§1030, et seq.; (3) violation of the Consumer Protection Statutes of Certain States; (4) breach of the implied covenant of good faith and fair dealing; (5) violation of the Consumer Legal Remedies Act ("CLRA"), California Civil Code §§1750, et seq.; (6) violation of California Business and Professions Code §§17200, et seq., based on fraudulent acts and practices; (7) violations of California Business and Professions Code §§17500, et seq., based on false and misleading advertising; (8) violation of California Business and Professions Code §§17200, et seq., based on unlawful acts; and (9) violation of California Business and Professions Code §§17200, et seq., based on unfair acts and practices.

Defendant Cox seeks to dismiss the complaint under Federal Rules of Civil Procedure 9, 12(b)(1) and 12(b)(6).  In support of its position, Cox points to the terms of the subscriber contract referenced by Plaintiff in the complaint.  In order for a subscriber to purchase Cox's service, the subscriber is required to check two "Customer Authorization" boxes confirming

that he or she has read and accepted the Cox Terms and Conditions of Service, Subscriber Agreement ("SA"), and Acceptable Use Policy ("AUP").  (Compl. ¶29; Doc. No. 15 Exs. A–C.)  Cox contends that it is permitted to manage the network under the terms of the subscriber agreement and never promised in its advertising unlimited uploading and downloading ability at the maximum speeds offered.  (Doc. No. 14 at 6.)  The SA sets forth the terms and conditions of the internet service and as part of the contract the subscriber agrees that Cox provides "Network Management" for the "greatest benefit of the greatest number of subscribers including, specifically, traffic prioritization, and protocol filtering."  (Compl. ¶30; Ex. B ¶¶6, 15.)  The AUP, which subscribers also agree to be bound by, states that:

> you must ensure that your activities do not improperly restrict, inhibit, or degrade any other user's use of the Service, nor represent (in Cox's sole judgment) an unusually great burden on the network itself.  In addition, you must ensure that your use does not improperly restrict, inhibit, disrupt, degrade or impede Cox's ability to deliver the Service and monitor the Service, backbone, network nodes, and/or other network services.  If you use excessive bandwith as determined by Cox, Cox may terminate, suspend, or require you to upgrade the Service and/or pay additional fees.

(Doc. No. 15, Ex. A ¶13.)  Based on these contractual clauses, Cox argues it was fully in its right to manage the network and made no false promises as its advertising never promised unlimited bandwith consumption or that P2P applications would never be blocked or interrupted.  (Doc. No. 14 at 5.)   Cox alternatively argues that this action should be stayed because it concerns the management of internet networks by service providers, which is a subject area falling squarely within the primary jurisdiction of the Federal Communications Commission ("FCC").  (Id. at 7.)  Cox contends that this Court should stay this proceeding until the final resolution of FCC proceedings concerning Comcast, a similar internet service provider, and until the FCC has specifically evaluated Cox's internet management practices.  (Id. at 7–9.)

/ / /

**<u>Discussion</u>**

## I. Defendant's Motion to Dismiss Pursuant to 12(b)(1)

Defendant moves to dismiss Plaintiff's third, fifth, sixth, and seventh causes of action under Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction. Defendant assert that Plaintiff lacks standing to bring these claims. (Doc. No. 14.) According to Defendant, Plaintiff cannot sustain her claims based on false advertising because she fails to allege that she purchased Cox's internet service as a result of any advertisement. (<u>Id.</u> at 19–20; Doc. No. 30 at 2.) Cox contends that Plaintiff also lacks standing to bring her fifth cause of action under the CLRA because she has not alleged she is a consumer. (Doc. No. 14 at 18; Doc. No. 30 at 3.) Additionally, Defendant argues Plaintiff lacks standing to bring her third cause of action for violation of various states' consumer protection statutes, as she fails to allege that the state statutes at issue confer upon her, a California citizen, any rights. (Doc. No. 14 at 23; Doc. No. 30 at 4.)

"For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." <u>Warth v. Seldin</u>, 422 U.S. 490, 501 (1975); <u>see also</u> <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992). The court does not "speculate as to the plausibility of the plaintiff's allegations." <u>Western Center for Journalism v. Cederquist</u>, 235 F.3d 1153, 1154 (9th Cir.2000).

Article III, §2 of the Constitution places the case or controversy limit on the federal judiciary. "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." <u>Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC) Inc.</u>, 704, 528 U.S. 167, 179 (2000). A plaintiff attempting to state a claim for violation of a statute must allege facts showing not only her Article III standing, but that the statute in question grants her the right to sue. <u>Cetacean Cmty. v. Bush</u>, 386 F.3d 1169, 1175 (9th Cir.

1  2004).

2  **A. False Advertising Causes of Action**

3  Plaintiff brings causes of action for violation of the CLRA, violation of California's

4  unfair competition law ("UCL"), and violation of California's false advertising law ("FAL")

5  based on Cox's alleged misrepresentations concerning internet service speed and omissions

6  regarding Cox's interference with P2P applications.  Defendant asserts that Plaintiff lacks

7  standing to sue under these three statutory provisions because she does not allege that her

8  purchase decision was the result of false advertising.  (Doc. No. 14 at 19–20; Doc. No. 30 at

9  2.)

10  Under the CLRA, actions may be bought only by a consumer "who suffers any damage

11  as a result of the use or employment " of a proscribed method, act, or practice. CAL. CIV. CODE

12  §1780(a).  Plaintiff alleges that Cox violated the CLRA by making representations that the

13  service has characteristics, uses and/or benefits which it does not; that the service is of a

14  particular quality which it is not; and by advertising goods without the intent to sell them as

15  advertised.  (Compl. ¶59.)  Plaintiff alleges these acts and practices of Cox were intended to

16  deceive Plaintiff and the California subclass.  (Id.)  "[P]laintiffs asserting CLRA claims

17  sounding in fraud must establish that they actually relied on the relevant representations or

18  omissions." <u>Buckland v. Threshold Enter.</u>, Ltd, 155 Cal.App.4th 798, 810 (2007).  Plaintiff

19  fails to allege that she viewed any of Cox's advertisements or representations prior to

20  subscribing to the service or that she relied upon the relevant representations or omissions in

21  deciding to purchase Cox's service.  Plaintiff alleges she "upgraded her Internet service to

22  Defendant's High Speed Internet Premier with PowerBoost Package in order to gain faster

23  uploads and downloads to and from the internet." (Comp. ¶28.)  Plaintiff also alleges certain

24  advertising statements made by Cox.  (<u>Id.</u> ¶27.)  However, Plaintiff does not allege that she

25  upgraded because of the allegedly false advertisements or omissions.  Therefore, Plaintiff fails

26  to allege standing to sue under the CLRA as she has not alleged that she suffered any damage

27  as a result of Cox's use of a proscribed act or practice.

28  While there is a split of authority over whether the UCL and the FAL post-proposition

64 similarly require that a plaintiff have actually relied on false advertisements or omissions in order to have standing to sue under those statutory provisions, the Court concludes that reliance is required to have standing to sue under the UCL and FAL for false advertising claims. See Cattie v. Wal-Mart Stores, Inc., 504 F.Supp.2d 939, 947–49 (S.D. Cal. 2007) (holding reliance is required); Laster v. T-Mobile USA, Inc., 407 F.Supp.2d 1181,1194 (S.D.Cal. 2005) (same); Stickrath v. Globalstar, Inc., 527 F.Supp.2d 992, 996 (N.D.Cal.,2007) (same); c.f. Anunziato v. eMachines, Inc., 402 F.Supp.2d 1133, 1137 (C.D.Cal.2005) (holding plaintiffs need not plead reliance). These statutory provisions permits individuals to assert  a claim under the UCL or FAL only if he or she "has suffered injury in fact and has lost money or property as a result of such unfair competition." CAL. BUS. & PROF. CODE §§17204 & 17535. Thus, post- proposition 64, the UCL and FAL contain the same causation requirement as the CLRA in that the damage from the wrongful conduct, in this case the false advertising, be a "result of" the wrongful conduct.  Because Plaintiff fails to plead that she actually read or saw any of the alleged misleading advertisements and decided to purchase the service based thereon, Plaintiff fails to have standing under the UCL and FAL.

The Court grants Defendant's motion to dismiss for lack of standing Plaintiff's fifth, sixth, and seventh causes of action with leave to amend.

**B. CLRA Cause of Action**

Cox also contends that Plaintiff lacks standing to bring her CLRA claim because she has not alleged that she is a consumer within the meaning of the act.  (Doc. No. 14 at 18; Doc. No. 30 at 3.)   To bring suit under the CLRA, a plaintiff must be a "consumer." CAL. CIV. CODE §1780(a).  "Consumer" under the CLRA, "means an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes." CAL. CIV. CODE §1761(d).  "Services" is defined as "work, labor, and services for other than a commercial or business use." Id.  Plaintiff does not allege in her complaint that she used Cox's internet service for personal, family, or household purposes and not for commercial or business use.  Plaintiff argues that because the service she purchased was for residential customers she has alleged that she is a consumer. (Doc. No. 22 at 7.)  Given the nature of the internet, it does

1   not go without saying that one purchasing internet service to use at home uses it only for

2   personal, family, or household purposes.  Thus, Plaintiff fails to plead standing under the

3   CLRA on this ground as well.

4   **C.  Other States' Consumer Protection Statutes Cause of Action**

5         Plaintiff's third cause of action is for violation of the consumer protection statutes of

6   certain states on behalf of Plaintiff and the Class.  (Compl. ¶¶44–48.)  This cause of action

7   asserts violations under consumer protection laws of each of the states in which Cox sells its

8   high speed internet service, a total of 27 states and the District of Columbia.[1]   (Id. ¶48.)

9   Plaintiff includes in her list of state consumer protection statutes the CLRA and the UCL.  (Id.

10  ¶48.)  Defendant argues that Plaintiff lacks standing to sue under the California statutes based

11  on the reasons set forth above, and under the other state statutes as she does not allege that they

12  confer on her any rights.  (Doc. No. 14 at 23; Doc. No. 30 at 4.)  Plaintiff in response argues

13  that the standing issue under the other states' consumer protection laws is not ripe yet and

14  should be reserved for after the class certification stage.  (Doc. No. 22 at 12.)

15        Plaintiff relies on Ortiz v. Fibreboard Corp., 527 U.S. 815 (1999), which examined class

16  certification issues before the question of Article III standing.  However, the Ninth Circuit has

17  held that it is proper for district courts to consider standing before class certification as

18  Fibreboard arose in a very specific situation of a mandatory global settlement class.  Easter v.

19  Am. West Fin., 381 F.3d 948, 962 (9th Cir. 2004).  "[I]f none of the named plaintiffs

20  purporting to represent a class establishes the requisite of a case or controversy with the

21  defendants, none may seek relief on behalf of himself or any other member of the class."

22  Lierboe v. State Farm Mut. Auto Ins. Co., 350 F.3d 1018, 1022-23 (9th Cir. 2003) (quotation

23  omitted).  Because Plaintiff does not sufficiently allege standing to sue under California

24  consumer protection statutes, she cannot seek relief on behalf of a class under other states'

25  consumer protection statutes.  Accordingly, the Court grants Cox's motion to dismiss the third

26  cause of action for lack of standing with leave to amend.

27

28        [1]Plaintiff in her third cause of action lists 27 states and the District of Columbia, but asserts
    elsewhere in the complaint that Cox sells its service in 22 states, including California, and the District
    of Columbia.  (Compl. ¶7.)

1   **II.  Defendant's Motion to Dismiss Pursuant to 12(b)(6)**

2       A motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) tests

3   the legal sufficiency of the claims asserted in the complaint.  Navarro v. Black, 250 F.3d 729,

4   731 (9th Cir. 2001).  A complaint generally must satisfy only the minimal notice pleading

5   requirements of Federal Rule of Civil Procedure 8(a)(2) to evade dismissal under a Rule

6   12(b)(6) motion.  Porter v. Jones, 319 F.3d 483, 494 (9th Cir. 2003).  Rule 8(a)(2) requires that

7   a pleading stating a claim for relief contain "a short and plain statement of the claim showing

8   that the pleader is entitled to relief."  The function of this pleading requirement is to "give the

9   defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Conley v.

10  Gibson, 355 U.S. 41, 47 (1957).   "While a complaint attacked by a Rule 12(b)(6) motion to

11  dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the

12  'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a

13  formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v.

14  Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1964–65 (2007).  "Factual allegations must be

15  enough to raise a right to relief above the speculative level."  Id. at 1965 (citing 5 C. Wright

16  & A. Miller, Federal Practice and Procedure § 1216, pp. 235–36 (3d ed. 2004)).   "All

17  allegations of material fact are taken as true and construed in the light most favorable to

18  plaintiff. However, conclusory allegations of law and unwarranted inferences are insufficient

19  to defeat a motion to dismiss for failure to state a claim."  Epstein v. Wash. Energy Co., 83

20  F.3d 1136, 1140 (9th Cir.1996); see also Twombly, 127 S.Ct. at 1964–65.

21      "Generally, a district court may not consider any material beyond the pleadings in ruling

22  on a Rule 12(b)(6) motion." Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542,

23  1555 n .19 (9th Cir.1990). The court may, however, consider the contents of documents

24  specifically referred to and incorporated into the complaint. Branch v. Tunnell, 14 F.3d 449,

25  454 (9th Cir.1994).  In evaluating a motion to dismiss, a court may consider evidence on

26  which the complaint "necessarily relies" as long as: (1) the complaint refers to the document;

27  (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity

28  of the copy attached to the 12(b)(6) motion.  Marder v. Lopez, 450 F.3d 445, 448 (9th Cir.

2006).  In addition, a court ruling on a motion to dismiss may consider facts that are subject to judicial notice under Federal Rule of Evidence 201. A district court may take judicial notice of matters of public record, but cannot use this rule to take judicial notice of a fact that is subject to "reasonable dispute" simply because it is contained within a pleading that has been filed as a public record.   Lee v. City of Los Angeles, 250 F.3d 668, 689–90 (9th Cir.2001).

In this case, the complaint specifically refers to the SA, AUP, Terms and Conditions, and Limitations of Service that a subscriber agrees to accept with the purchase of internet service. (Compl. ¶29.) These documents are central to Plaintiff's claim and no party questions the authenticity of the copy of the documents attached to Cox's 12(b)(6) motion. (Doc. No. 15 Exs. A–D.)  In addition, Cox requests the Court take judicial notice of the FCC's Internet Policy Statement, 20 F.C.C.R. 14986 (2005); excerpts from the FCC's opinion and order, In The Matter of Formal Complaint of Free Press and Public Knowledge Against Comcast Corporation for Secretly Degrading Peer-to-Peer Applications, 23 F.C.C.R. 13028 (Aug. 20, 2008); the first amended complaint in Hart v. Comcast of Alameda, Civ. No. 07-6350 (N.D. Cal.); and a Wikipedia page defining "uploading" and "downloading."  (Doc. No. 15.) Plaintiff requests the Court take judicial notice of the complaint filed in Hart v. Comcast Corp., Case no. RG 07-355993; an order granting a request to stay in Hart v. Comcast, filed June 25, 2008; a transcript from Hart v. Comcast, dated June 18, 2008; a transfer order from the United States Judicial Panel on Multidistrict Litigation, In re: Comcast Corp. Peer-to-Peer Transmission Contract Litigation, filed December 5, 2008; a consolidation order, In re: Federal Communications Commission Memorandum Opinion and Order, filed September 8, 2008; and the FCC's opinion and order concerning Comcast, released August 20, 2008.  (Doc. No. 23.) Because these are matters of public record, the Court takes judicial notice of the documents. The Court declines to take judicial notice of the Wikipedia page offered by Cox.

**A. Breach of Contract Claim**

Plaintiff's first cause of action alleges Cox breached a written or implied contract. (Compl. ¶¶37–40.)  In a breach of contract claim under California law, a plaintiff must allege (1) a contract, (2) plaintiff's performance, (3) defendant's breach, and (4) damages. McDonald

v. John P. Scripps Newspaper, 257 Cal.Rptr. 473, 475 (Cal. Ct. App. 1989). Under the terms of the SA, however, the agreement "shall be exclusively governed by, and construed in accordance with, the laws of the State of Georgia." (Doc. No. 15, Ex. B ¶19.) Under Georgia law, "'[t]he elements of a right to recover for a breach of contract are the breach and the resultant damages to the party who has the right to complain about the contract being broken.'" Budget Rent-a-Car of Atlanta, Inc. v. Webb, 220 Ga.App. 278, 280 (1996) (quoting Graham Bros. Constr. Co. v. C.W. Matthews Contracting Co., 159 Ga.App. 546, 550 (1981)).

Plaintiff alleges that she entered into a written or implied contract with Cox to pay monthly fees in order to obtain the internet service, that she performed her obligations under the contract by paying her monthly fees, Cox unjustifiably breached the contract by restricting Plaintiff's access to and use of the service, and that Plaintiff was damaged by this breach because she did not receive the service for which she paid. (Compl. ¶¶ 38–40.) Plaintiff alleges that Cox advertised that "Cox High Speed Internet is an always-on connection with speed to download in seconds, not minutes." (Id. ¶27.) Plaintiff further alleges that the Terms and Conditions, SA, and AUP are required to be accepted by a subscriber in order to purchase the service and these agreements make promises concerning Cox's provision of the service, including maximum upstream and downstream speeds. (Id. ¶28.) The SA also contains a provision that Cox has "the right to manage its network for the greatest benefit of the greatest number of subscribers including, without limitation, the following: rate limiting, rejection or removal of 'spam' or otherwise unsolicited bulk email, anti-virus mechanisms, traffic prioritization, and protocol filtering." (Id. ¶30.) Plaintiff alleges that none of the agreed to policies or terms of service state that Cox can or will impede, limit, discontinue, block, or otherwise impair or treat differently P2P applications. (Id. ¶30.)

Plaintiff fails to sufficiently plead a cause of action for breach of contract under either California or Georgia law. She fails to allege what contract provision was breached by Cox, as she points to no obligation by Cox to provide unlimited access to its service without interruption or restriction, nor a contractual promise by Cox to provide unlimited P2P use by subscribers. Under the terms of the SA and AUP, Cox reserves the right to manage its network

and states that "[i]f you use excessive bandwith as determined by Cox, Cox may terminate, suspend, or require you to upgrade the Service and/or pay additional fees." (Doc. No. 15, Ex. A ¶13 & Ex. B ¶15.) Plaintiff subscribed to a service and agreed to use limitations and Cox's discretion to manage its network. Plaintiff's allegation that Cox advertised an always-on connection is not alleged to be a term of the contract and she has not alleged that her internet connection was not always-on, just that certain applications were impeded or blocked during downloads and uploads. Furthermore, Plaintiff does not allege she complied with all of the terms of the AUP, such as that her P2P software did not consume excessive bandwith or that she used the service only for non-commercial purposes. (Id. Ex. A ¶13; Ex. D.) Plaintiff does not sufficiently allege a breach of the terms of the contract by Cox or her performance under the contract (or under Georgia law, her right to complain about the contract being broken). Accordingly, the Court grants with leave to amend Defendant's motion to dismiss Plaintiff's first cause of action for failure to state a claim.

**B.  Computer Fraud and Abuse Act ("CFAA") Claim**

Plaintiff's second cause of action is for a violation of CFAA, 18 U.S.C. §§1030, et seq. (Compl. ¶¶41–43.) CFAA is violated when another "knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer." 18 U.S.C. §1030(a)(5)(A). In order to bring a civil action against a violator of CFAA, there must be "loss to 1 or more persons during any 1-year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only, loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $5,000 in value." Id. §§1030(c)(4)(A)(i)(I) & 1030(g). The term "loss" is defined in the statute as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." Id. §1030(e)(11). The term "damage" is defined in the statute as "any impairment to the integrity or availability of data, a program, a system, or information."

1   Id. §1030(e)(8).

2          Plaintiff alleges that Cox violated CFAA by sending unauthorized secret messages to

3   her computer in order to block and/or impede their use of P2P applications.  (Compl. ¶42.)

4   Plaintiff alleges that Cox has caused her and the other members of the class to suffer damage

5   and loss in an aggregate amount in excess of $5000.  (Id.)

6          Plaintiff does not sufficiently allege a violation of CFAA.  Plaintiff does not allege she

7   suffered a loss as defined by the statute, as she does not allege that she spent any money

8   responding to the interruption of her P2P applications, spent money conducting a damage

9   assessment, and restoring the affected data, program, system, or information to its condition

10  prior to the interruption of her P2P application, or any other economic damages incurred due

11  to Cox's conduct. Plaintiff also does not allege that she sustained a loss of $5000 of aggregate

12  damages during a one year period from damage caused to her protected computer.  Plaintiff

13  attempts to aggregate losses of the entire class in order to meet the $5000 requirement;

14  however, under the language of the statute, only federal prosecutors may aggregate losses

15  across multiple protected computers from a related course of conduct.  See 18 §U.S.C.

16  1030(c)(4)(A)(i)(I).   Plaintiff has not alleged that she, or any individual protected computer

17  among class members, alone sustained $5000 in damages.  Accordingly, the Court grants with

18  leave to amend Defendant's motion to dismiss Plaintiff's second cause of action.

19  **C. Violation of Consumer Protection Statutes of Certain States**

20         Plaintiff's third cause of action is for violations of consumer protection statutes of 27

21  states and the District of Columbia.  Because the Court dismisses this cause of action based

22  on a lack of standing, we need not reach the issue of whether Plaintiff's allegations meet the

23  Twombly pleading standard under all 27 states' and the District of Columbia's consumer

24  protection statutes.

25  **D. Breach of the Implied Covenant of Good Faith and Fair Dealing Claim**

26         Plaintiff's fourth cause of action is for a breach of the covenant of good faith and fair

27  dealing.  California recognizes that every contract contains an implied covenant of good faith

28  and fair dealing, "'impos[ing] upon each contracting party the duty to refrain from doing

anything which would render performance of the contract impossible by any act of his own, but also the duty to do everything that the contract presupposes that he will do to accomplish its purpose.'" 1 Witkin, Summary of California Law, Contracts § 798 (10th ed. 2005).  In order to state a claim for relief on an implied covenant theory, there must first be a contractual relationship between the parties.  Id. § 800 (citation omitted).  "The essence of the good faith covenant is objectively reasonable conduct."  Id. § 801.  A breach of the implied covenant of good faith and fair dealing requires something more than a breach of the contractual duty itself.  Careau & Co. v. Security Pacific Business Credit, Inc., 222 Cal.App.3d 1371, 1394 (1990) (citations omitted).  This "implies unfair dealing rather than mistaken judgment."  Id.

According to the Georgia Supreme Court, "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement."  Brack v. Brownlee, 246 Ga. 818, 820 (1980).  Under Georgia law, where a party cannot maintain a cause of action for breach of contract, that party cannot maintain an independent cause of action for a breach of good faith because the implied covenant of good faith and fair dealing "is not an independent contract term."  Stuart Enter. Intern., Inc. v. Peykan, Inc., 252 Ga.App. 231, 234 (2001) (quotation omitted).

Plaintiff alleges that in exchange for monthly payments, Cox agreed to provide internet service to Plaintiff.  (Compl. ¶50.)  According to Plaintiff, Cox did not inform her that it could or would limit the service by impeding and/or blocking P2P applications, and that Cox told Plaintiff that she would receive an "always-on connection" to the content, services, and applications of the internet.  (Id.)  Plaintiff alleges that she purchased the service with the reasonable expectation that Cox would deal with her honestly, fairly, equitably, in good faith and in full conformity with the fundamental and implied terms of the contract and that this expectation was brought about by language used in Cox's terms of use and SA, advertising, and express representations of employees, agents and representatives.  (Id. ¶52.)  Plaintiff alleges Cox breached the covenant of good faith and fair dealing by scheming to impede the use of P2P applications, failing to clearly and definitely notify Plaintiff that she would not be able to use P2P applications, continuing to misrepresent to Plaintiff that she would enjoy

unfettered access to the internet, and putting the interests of Cox ahead of Plaintiff.  (Id. ¶54.)

Plaintiff fails to plead a cause of action for breach of the implied covenant of good faith and fair dealing.  Plaintiff's claim for breach of contract fails, and thus under either California or Georgia law her claim for breach of the implied covenant must also fail.  Plaintiff's claim for breach of the implied covenant rests mainly on alleged advertisements by Cox and not on the contractual provisions of the various agreements to which Plaintiff agreed when she subscribed to the service.  The Court grants with leave to amend Defendant's motion to dismiss Plaintiff's fourth cause of action for failure to state a claim.

### E.  CLRA Claim

Plaintiff's fifth cause of action is for a violation of the CLRA, California Civil code §§1750, et seq.   (Compl. ¶¶58–64.)   According to Plaintiff, Cox violated sections §§1770(a)(5), (7), and (9) of the CLRA.  (Id. ¶59.)  These sections of the CLRA prohibit:

(a)(5)  Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have.

(a)(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

(a)(9) Advertising goods or services with intent not to sell them as advertised.

CAL. CIV. CODE §§1770(a)(5), (7), & (9).

Plaintiff alleges that the acts and practices of Cox described in its complaint violate these provisions of the CLRA.  (Compl. ¶59.)  Plaintiff alleges that the acts and practices of Cox were intended to deceive Plaintiff and the Class.  (Id.)  Plaintiff's complaint alleges that Cox made the following representations regarding the service in its advertising:

- All the speed you'll ever need!  Now faster than ever with PowerBoost!

- Buckle up.  Cox High Speed Internet just got even faster.

- Just when you thought you knew what fast was, we made it even

faster.

- Hold on tight for increased Internet PowerBoost speeds up to 20 Mbps for Premier Tier and 12 Mbps for Preferred Tier customers.
- For those moments when you need a little extra boost, PowerBoost will blast you into a world of instant gratification - FREE . . . you can now enjoy doubled upload speeds and up to 33% faster downloads.
- Cox High Speed Internet's blazing-fast speeds are the perfect match for streaming hours of live coverage . . .
- Cox High Speed Internet is an always-on connection with speed to download in seconds, not minutes.
- Cox Communications–and most cable Internet providers–are currently used the DOCSIS 1.1 standard for high-speed internet, which is technically capable of offering blazing download speeds up to over 30 Mbps per channel.

(Id. ¶27.)

Cox argues that Plaintiff's CLRA claim fails because she does not allege that she is a consumer within the meaning of the statute and that she relied on any advertisement in deciding to purchase the internet service, she fails to identify statements that were likely to deceive a reasonable consumer, and she fails to plead fraud allegations with particularity. (Doc. No. 14 at 20–21.)  Cox argues that Plaintiff's CLRA claim regarding false advertising sounds in fraud and is thus subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b).  (Doc. No. 14 at 19.)  Although fraud is not an essential element of a claim under the CLRA, in some cases a "plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim. In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103–04 (9th Cir. 2003).  "In other cases, however, a plaintiff may choose not to

1  allege a unified course of fraudulent conduct in support of a claim, but rather to allege some

2  fraudulent and some non-fraudulent conduct." <u>Id.</u>  In such cases, the text of Rule 9(b) requires

3  only that in "all averments of fraud ..., the circumstances constituting fraud ... shall be stated

4  with particularity." FED.R.CIV.P. 9(b).  "[I]f particular averments of fraud are insufficiently

5  pled under Rule 9(b), a district court should 'disregard' those averments, or 'strip' them from

6  the claim. The court should then examine the allegations that remain to determine whether they

7  state a claim." <u>Vess</u>, 317 F.3d at 1105.

8          Plaintiff fails to state a claim under the CLRA.  As noted above, Plaintiff lacks standing

9  under the CLRA as she does not adequately allege her status as a consumer or that she actually

10 relied upon any of the alleged false advertisements.  To the extent that her claim under the

11 CLRA is grounded on fraud, Plaintiff fails to plead fraud with particularity.  "Averments of

12 fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct

13 charged."  <u>Vess</u>, 317 F.3d at 1106 (quoting <u>Cooper v. Pickett</u>, 137 F.3d 616, 627 (9th

14 Cir.1997)).  "'[A] plaintiff must set forth more than the neutral facts necessary to identify the

15 transaction. The plaintiff must set forth what is false or misleading about a statement, and why

16 it is false.'" <u>Id.</u> (quoting <u>Decker v. GlenFed, Inc.</u> (<u>In re GlenFed, Inc. Sec. Litig.</u>), 42 F.3d

17 1541, 1548 (9th Cir.1994)).  Plaintiff alleges that Cox intended to deceive her and the

18 California subclass through its advertising, but fails to plead when Cox made these statements,

19 where Cox made the statements, and what about the statements is false or misleading and why

20 it is false or misleading. For example, Plaintiff alleges that Cox advertised Premier Tier speeds

21 up to 20 Mbps, but fails to allege how this is false as she does not allege that speed was not

22 obtained by her or other subscribers.   In addition, Plaintiff fails to meet the pleading

23 requirements of fraud under California law, elements of which "include false representation,

24 knowledge of its falsity, intent to defraud, justifiable reliance, and damages."  <u>Moore v.</u>

25 <u>Brewster</u>, 96 F.3d 1240, 1245 (9th Cir.1996) (quotations omitted).  Plaintiff does not allege

26 her reliance on any particular advertisement. Thus, Plaintiff's allegations regarding Cox's

27 fraudulent conduct are stripped from the claim.

28          Cox also argues that Plaintiff's CLRA claim fails because the statements allegedly made

by Cox are non-actionable puffery. (Doc. No. 14 at 20.) Under California law, advertisements and conduct are false and misleading under the CLRA if they are likely to deceive an ordinary consumer. Williams v. Gerber Products Co., – F.3d –, 2008 WL 5273731 at *3 (9th Cir. Dec. 22, 2008). Puffery and vague quality assurances do not give rise to liability. To be actionable, advertisements must be verifiable factual representations that can be demonstrated to be true, or false, with evidence gleaned in the discovery process. See Consumer Advocates v. Echostar Satellite Corp., 113 Cal.App.4th 1351, 1361 (2003). While some of the advertisements Plaintiff points to are certainly puffery on their own, such as "blazing fast," Plaintiff does allege statements made by Cox that may be demonstrated to be true or false, such as download speeds up to 20 Mbps and whether upload speed is indeed doubled and downloads are indeed 33% faster. "California courts . . . have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer." Gerber, 2008 WL 5273731 at *3. Plaintiff has sufficiently pled statements likely to deceive under the CLRA.

The Court grants with leave to amend Defendant's motion to dismiss Plaintiff's fifth cause of action under the CLRA for failure to state a claim. Plaintiff fails to adequately plead that she has standing under the statute and that Cox's advertisements were fraudulent in violation of the CLRA with particularity.

## F.    Unfair Competition Law Claim

Plaintiff's sixth cause of action alleges Defendants violated California's Unfair Competition Laws ("UCL") based on fraudulent acts and practices. (Compl. ¶¶65–71.) The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." CA. BUS. & PROF. CODE §17200. Persons authorized to bring claims under the UCL are "those who have suffered injury in fact and lost money or property as a result of the unfair competition." CAL. BUS. & PROF. CODE §17204. As under the CLRA, conduct under the UCL is deceptive or misleading if it is likely to deceive an ordinary consumer. Gerber, 2008 WL 5273731 at *3.

Plaintiff alleges that Cox engages in conduct that is likely to deceive Plaintiff and the

California subclass, including promoting and advertising the fast speeds that apply to the service without limitation when Cox severely limits the speed of service for certain P2P applications and deceiving consumers into purchasing the service in the mistaken belief that they will be able to use the service for P2P applications when Cox actively limits and/or blocks such applications. (Compl. ¶67.) Plaintiff alleges she has suffered injury in fact because she did not obtain the full value of the advertised service. (Id. ¶70.)

Plaintiff fails to state a cause of action for a violation of the UCL. As discussed above, Plaintiff lacks standing under the UCL as she does not allege that her injury resulted from Cox's alleged fraudulent conduct. Plaintiff does not allege that she saw or read any advertisement prior to purchasing the service nor that she purchased the service on the basis of any such advertisement. Cox argues that Plaintiff's claim under the UCL also fails because it is not plead with particularity as required by Rule 9(b) and because a reasonable consumer could not be mislead by Cox's statements. (Doc. No. 14 at 18–22.) Plaintiff's claim under the UCL for fraudulent acts and practices does not sound in fraud as she does not allege in regards to this cause of action that Cox intended to defraud Plaintiff, only that its actions were likely to deceive. Plaintiff set forth the statements she alleges are misleading with enough specificity to meet the normal notice pleading standard of Rule 8(a). As discussed in connection with Plaintiff's CLRA claim, she has alleged statements that are likely to deceive and are more than just puffery. However, because Plaintiff does not sufficiently allege her standing to sue under the UCL, the Court grants with leave to amend Defendant's motion to dismiss Plaintiff's sixth cause of action.

## G. FAL Claim

Plaintiff's seventh cause of action is for a violation of California's False Advertising Law ("FAL"), California Business and Professions Code §§17500 et seq. (Compl. ¶¶72–77.) The FAL makes it unlawful for a business to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading ...." CAL. BUS. & PROF. CODE §17500. This provision has been "interpreted broadly to embrace not only advertising which is false, but also advertising which

although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." <u>Leoni v. State Bar</u>, 39 Cal.3d 609, 626 (1985).  As under the CLRA and the UCL, conduct under the FAL is deceptive or misleading if it is likely to deceive an ordinary consumer.  <u>Gerber</u>, 2008 WL 5273731 at *3.

Plaintiff alleges that Cox disseminates advertising it knows or reasonably should know to be false and misleading, including promoting and advertising the fast speeds that apply to internet service without limitation when in fact Cox limits the speed of the service for certain applications and the misrepresentation that customers will enjoy an "always-on" connection to all internet applications when Cox limits and/or blocks certain applications.  (Compl. ¶74.) Plaintiff alleges that she has paid money for the service and did not obtain the full value of the advertised service due to Cox's obstruction of P2P applications, and therefore has suffered injury in fact.  (<u>Id.</u> ¶76.)

Plaintiff fails to state a claim under the FAL for the same reasons as under the UCL. Plaintiff does not allege that she viewed any advertisement nor that she purchased the service as a result of any advertisement.  Cox argues Plaintiff's claim under the FAL is deficient because it fails to meet the pleading requirements of Rule 9(b) and fails to allege statements likely to deceive an ordinary consumer.  (Doc. No. 14 at 18–22.)  The Court rejects these arguments for the same reasons as in connection with Plaintiff's UCL cause of action. Accordingly, the Court grants with leave to amend Defendant's motion to dismiss Plaintiff's seventh cause of action.

**H.  UCL Claim based on Unlawful Acts**

Plaintiff's eighth cause of action is for a violation of California's UCL based on commission of unlawful acts.  (Compl. ¶¶78–86.)  Under the UCL "unlawful" prong, "anything that can be called a business practice and that at the same time is forbidden by law" is "independently actionable as unfair competitive practices." <u>CRST Van Expedited, Inc. v. Werner Enterprises, Inc.</u>, 479 F.3d 1099, 1107 (9th Cir. 2007).

Plaintiff alleges that Cox is in violation of the UCL based on unlawful acts because it has violated the CLRA, the FAL, and the CFAA.  (Compl. ¶¶80–83.)  Because Plaintiff fails

1    to state a claim under those statutory provisions, Plaintiff's cause of action under the UCL for

2    unlawful acts must also fail.  The Court grants with leave to amend Defendant's motion to

3    dismiss Plaintiff's eighth cause of action.

4    **I.  UCL Claim based on Unfair Acts and Practices**

5         Plaintiff's ninth cause of action is for a violation of California's UCL based on unfair

6    acts and practices.  (Compl. ¶¶87–93.)  Plaintiff alleges that Cox engages in conduct which is

7    immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers,

8    including misrepresenting that its customers enjoy high speed access to all internet applications

9    while at the same time limiting access to P2P applications and deceiving customers into buying

10   the service in the mistaken belief customers can utilize the service for use of P2P applications

11   while actively limiting and/or blocking P2P applications.  (Compl. ¶89.)  Plaintiff alleges

12   Cox's conduct violates the legislatively-declared policy of the CLRA and the CFAA.  (Id.

13   ¶90.)  Plaintiff further alleges that the gravity of the harm caused by Cox's conduct far

14   outweighs the utility of its conduct.  (Id. ¶89.)

15        The Court grants with leave to amend Defendant's motion to dismiss Plaintiff's ninth

16   cause of action as Plaintiff fails to sufficiently plead that Cox violated the CLRA or CFAA and

17   thus has failed to allege that Cox's conduct violates the policies underlying those statutes.

18   Furthermore, Plaintiff's allegations that the harm caused by Cox's conduct far outweighs the

19   utility to its users are conclusory.  Cox's SA expressly reserves "the right to manage its

20   network for the greatest benefit of the greatest number of subscribers."  (Doc. No. 15, Ex. B

21   ¶15.)  Plaintiff does not allege facts that Cox's management of the network and alleged

22   blocking of P2P applications fails to do this.

23   **III.  FCC Primary Jurisdiction**

24        Cox also requests that this lawsuit be stayed under the doctrine of primary jurisdiction.

25   (Doc. No. 14 at 9.)  Cox argues that a stay is appropriate until the final resolution of related

26   FCC proceedings concerning Comcast and until the FCC has specifically evaluated Cox's

27   practices.  The FCC evaluated the reasonableness of Comcast's management of its internet

28   service in blocking certain P2P applications under the FCC's internet policy statement, and this

1  agency determination is currently up on appeal.  (See Doc. No. 15, Ex. F.)  "The doctrine of

2  primary jurisdiction 'is a prudential doctrine under which courts may, under appropriate

3  circumstances, determine that the initial decision making responsibility should be performed

4  by the relevant agency rather than the courts."  Davel Communications, Inc. v. Qwest Corp.,

5  460 F.3d 1075, 1086 (9th Cir. 2006) (quotation omitted).  Cox argues that the "reasonableness"

6  of a broadband provider's network management practices has been firmly placed by statute

7  within the jurisdiction of the FCC.  See 47 U.S.C. §§151, et seq.; (Doc. No. 15, Ex. F at

8  26–41).

9        The Court declines to stay this lawsuit under the doctrine of primary jurisdiction.  The

10  FCC proceedings with Comcast concern a different internet provider and different claims.

11  FCC proceedings are not underway to determine the reasonableness of Cox's management of

12  its service, nor is there an indication by Cox of when such proceedings may commence.

13  Furthermore, the issues involved in this case are primarily grounded in contract, false

14  advertising, and unfair competition, issues traditionally within the scope of the judiciary.  See

15  Nader v. Allegheny Airlines, Inc., 426 U.S. 290, 305-06 (1976); County of Santa Clara v.

16  Astra USA, Inc., 540 F.3d 1094, 1108–09 (9th Cir. 2008).  Accordingly, the Court declines to

17  issue a stay.

18                                  **Conclusion**

19        For the reasons set forth above, the Court GRANTS WITH LEAVE TO AMEND

20  Defendant's motion to dismiss the complaint and DENIES Defendant's request for a stay of

21  the action.  Plaintiff shall file a first amended complaint correcting the deficiencies noted by

22  this order within 30 days of the date of this order.

23        **IT IS SO ORDERED.**

24  DATED: February 6, 2009

25

26                                  MARILYN L. HUFF, District Judge
                                    UNITED STATES DISTRICT COURT
27

28  COPIES TO:
    All parties of record.