RICHARD R. PATCH (State Bar No. 88049)
SUSAN K. JAMISON (State Bar No. 131867)
ZUZANA S. IKELS (State Bar No. 208671)
MARIO A. MOYA (State Bar No. 262059)
COBLENTZ, PATCH, DUFFY & BASS LLP
One Ferry Building, Suite 200
San Francisco, California 94111-4213
Telephone: 415.391.4800
Facsimile: 415.989.1663
Email: ef-rrp@cpdb.com
ef-skj@cpdb.com
ef-zsi@cpdb.com
ef-mam@cpdb.com

Attorneys for Defendant
COXCOM, INC.,
d/b/a COX COMMUNICATIONS, INC.

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

**SAN DIEGO DIVISION**

LYNN LYONS, on Behalf of Herself and All Others Similarly Situated,

Plaintiff,

v.

COXCOM, INC., d/b/a COX COMMUNICATIONS, INC.; COX ENTERPRISES, INC.; AND DOES 1-250,

Defendants.

Case No. 3:08-CV-2047-H-CAB

**DEFENDANT COX COMMUNICATIONS INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO:**

**(1) STRIKE THE CLASS ALLEGATIONS AND DISMISS THE FIRST AMENDED COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION; AND**

**(2) DISMISS THE FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM AND FOR FAILURE TO PLEAD WITH PARTICULARITY**

**[F.R.C.P. §§ 9, 12(b)(1), 12(b)(6), 12(f) & 23]**

**Hearing Date:** **May 18, 2009**
**Time:** **10:30 a.m.**
**Judge:** **Hon. Marilyn L. Huff**
**Dept:** **Courtroom 13, 5th Floor**

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

## TABLE OF CONTENTS

Page

INTRODUCTION....1

PROCEDURAL BACKGROUND....3

FACTUAL BACKGROUND....3

I. The Allegations Supporting Plaintiff's Class Action Allegations....3

A. Cox's Advertisements Regarding Its Internet Speeds....4

B. The Contract Documents: Cox's Disclosures Regarding The Limitations On Its Residential Service....5

C. Cox's Practices And Plaintiff's Alleged Injury....6

ARGUMENT....7

I. PLAINTIFF'S ALLEGATIONS AND JUDICIALLY NOTICEABLE FACTS DEMONSTRATE THAT THE COURT'S SUBJECT MATTER JURISDICTION IS QUESTIONABLE....7

A. If The Class Allegations Fail To Allege A Certifiable Class, The Entire Action Should Be Dismissed For Lack Of Subject Matter Jurisdiction....8

B. Discovery Is Unnecessary To Determine That Individualized Proof Would Be Required To Ascertain Effects in Plaintiffs' Class Allegations....8

1. Only A Small Subset of Cox's Subscribers Would Possess Claims Like Plaintiff's. That Subset of Subscribers Could Not Be Identified Without Conducting Thousands of Individualized "Mini-Trials."....8

2. Individualized "Reliance" Issues Preclude Certification of A Class....10

3. Identifying Which Class Members Suffered Injury or Damage As A Result of The Claimed Wrongful Conduct Would Likewise Require Individualized Minitrials....12

4. Other Individualized Factual Determinations Relating to Membership In The Class Would Swamp Common Issues And Render The Case Wholly Unmanageable....15

II. PLAINTIFF HAS STILL FAILED TO STATE ANY CLAIM FOR RELIEF....17

A. The Contract-Based Claims Remain Insufficiently Plead....17

1. Plaintiff Fails to Allege That Cox Breached An Actual

Provision of the Contract. ....18

2. Plaintiff Does Not Allege Any Damage. ....20

3. There Is No "Stand-Alone" Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing. ....20

III. PLAINTIFF'S FALSE ADVERTISING ALLEGATIONS DO NOT STATE A CLAIM UNDER THE UCL, FAL, OR CLRA. ....21

A. The Binding Contract Bars Plaintiff's UCL, FAL and CLRA Claims. ....21

B. The Complaint Does Not Describe Actionable Misrepresentations To Support the FAL Claim or Violations of the UCL Fraudulent and Unfairness Prongs. ....23

C. Plaintiff's Derivate UCl "Unlawfulness" Claim Should Be Dismissed. ....24

IV. PLAINTIFF'S CLRA CLAIM STILL FALLS TO SATISFY RULE 9(b). ....25

CONCLUSION ....25

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Akkerman v. Mecta Corp., Inc.*, 152 Cal. App. 4th 1094 (2007) ........ 10, 11, 12

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ........ 12

*Automatic Sprinkler Corp. v. Anderson*, 257 S.E.2d 283 (Ga. 1979) ........ 20

*Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255 (2006) ........ 23, 24

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ........ 17

*Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544 (2007) ........ 23

*Bessette v. Avco Fin. Servs., Inc.* 279 B.R. 442 (D.R.I. 2002) ........ 8

*Brinderson-Newberg Joint Venture v. Pac. Erectors*, 971 F.2d 272 (9th Cir. 1992) ........ 22

*Brothers v. Hewlett Packard Co.*, 2006 WL 3093685 (N.D.Cal. 2006) ........ 23

*Buller v. Sutter Health*, 160 Cal. App. 4th 981 (2008) ........ 24

*Caro v. Procter & Gamble Co.*, 18 Cal. App. 4th 644 (1993) ........ 12

*Comm. Network Servs., Inc. v. MCI Worldcom Comm., Inc.*, 573 S.E.2d 461 (Ga.App. 2002) ........ 20

*Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824 (2006) ........ 24

*Edwards v. First Am. Corp.*, 251 F.R.D. 454 (C.D. Cal. 2008) ........ 16

*Freeman v. Time, Inc.*, 68 F.3d 285 (9th Cir. 1995) ........ 22

*Gartin v. S & M Nutec LLC*, 245 F.R.D. 429 (C.D. Cal. 2007) ........ 12, 13

*Heritage Creek Dev. Corp. v. Colonial Bank*, 601 S.E.2d 842 (Ga.App. 2004) ........ 20

*Hoffman v. Cingular Wireless, LLC*, 2008 WL 4093722 (S.D.Cal. Sept. 4, 2008) ........ 7

*Hovendick v. Presidential Fin. Corp.*, 497 S.E.2d 269 (Ga.App. 1998) ........ 20

*Hunting Aircraft, Inc. v. Peachtree City Airport Authority*, 636 S.E.2d 139 (Ga.App. 2006) ........ 21

*In re Stac Electronics Securities Litigation*, 89 F.3d 1399 (9th Cir. 1996) ........ 17

*Inlandboatmens Union of Pacific v. Dutra Group*, 279 F.3d 1075 (9th Cir. 2002) ........ 4

*Inter-Mark-USA, Inc. v. Intuit Inc.*, 2008 WL 552482 (N.D.Cal. Feb. 27, 2008) ........ 21

*Jackvony v. Riht Financial Corp.*, 873 F.2d 411 (1st Cir. 1989) ........ 22

*Johnson v. Riverside Healthcare System, L.P.*, 534 F.3d 1116 (9th Cir. 2008) ........ 17

*Kinderstart.com LLC v. Google, Inc.*, 2006 WL 3246596 (N.D.Cal. July 13, 2006) ........ 21

*Kuritzky v. Emory Univ.*, 294 Ga. App. 370 (2008) ........ 18

*Leonard J. Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004) ........ 16

*Love v. The Mail on Sunday*, 2006 WL 4046180 (C.D.Cal. 2006) ........ 21

*McCrimmon v. Tandy Corp.*, 414 S.E.2d 15 (Ga.App. 1991) ........ 19

*Meadow River Lumber Company et al. v. University Of Georgia Research Foundation, Inc.*, 503 S.E.2d 655 (Ga.App. 1998) ........ 19

*Med South Health Plans, LLC v. Life of South Ins. Co.*, 2008 WL 2119915 (M.D.Ga. 2008) ........ 20

*MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005) ........ 13, 15

*Mustaqeem-Graydon v. Suntrust Bank*, 573 S.E.2d 455 (Ga.App. 2002) ........ 20

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

*Myung-Sung Presbyterian Church v. North American Ass. of Slavic Churches & Ministries, Inc.*, 662 S.E.2d 745 (Ga.App. 2008) ........ 19

*Overturf v. Rocky Mt. Chocolate Factory, Inc.*, No. SACV 08-0365, 2008 U.S. Dist. LEXIS 91135 (C.D.Cal July 21, 2008) ........ 22

*Pfizer Inc. v. Superior Court*, 141 Cal. App. 4th 290 (2006) ........ 11

*Picus v. Wal-Mart Stores*, __ F.Supp.2d __, 2009 WL 667419 (D.Nev. 2009) ........ passim

*Plotkin v. Sajahtera, Inc.*, 106 Cal. App. 4th 953 (2003) ........ 23

*Poulos v. Caesar's World*, 379 F.3d 654 (9th Cir. 2004) ........ 11, 13, 14

*Sanders v. Apple, Inc.*, 2009 WL 150950 (N.D. Cal. 2009) ........ 7, 11

*SDMS, Inc. v. Rocky Mt. Chocolate Factory, Inc.*, 2008 WL 4838557 (S.D. Cal. 2008) (Miller, J.) ........ 22

*Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293 (9th Cir. 1998) ........ 7, 18

*Stubbs v. McDonald's Corp.*, 224 F.R.D. 668 (D.Kan. 2004) ........ 10, 16

*Vinole v. Countrywide Home Loans, Inc.*, 246 F.R.D. 637 (S.D. Cal. 2007) ........ 8

*Walls v. Wells Fargo Bank, N.A.*, 262 B.R. 519 (Bankr. E.D. Cal. 2001) ........ 8

*Warren v. Fox Family Worldwide, Inc.*, 171 F.Supp.2d 1057 (C.D.Cal. 2001) ........ 17

*Wilens v. TD Waterhouse*, 120 Cal. App. 4th 746 (2003) ........ 14, 15, 16

**STATUTES & RULES**

17 U.S.C. sections 101 *et seq*. ........ 13

28 U.S.C. section ........ 8

28 U.S.C. section 1332(d)(2) ........ 1, 3, 4, 8

California Business & Professions Code
sections 17200 *et seq*. ........ 21
sections 17500 *et seq*. ........ 21



COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

California Civil Code
sections 1750 *et seq.* .......... 21

Federal Rules of Civil Procedure
Rule 9(b) .......... 1, 25
Rule 12(b)(1) .......... 1, 7, 8, 17
Rule 12(b)(6) .......... 1
Rule 12(f) .......... 3, 16
Rule 23 .......... 12

**OTHER AUTHORITIES**

Matthew Helton, *Secondary Liability for Copyright Infringement: BitTorrent as a Vehicle for Establishing a New Copyright Definition for Staple Articles of Commerce*, 40 Colum. J. L. & Soc. Probs. 1, 20-21 (2006) .......... 18

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

**INTRODUCTION**

This Court dismissed the original complaint in this action because plaintiff lacked standing to bring certain of the claims and had failed to sufficiently plead the grounds upon which the claims rested. The First Amended Complaint ("Amended Complaint" or "FAC") adds new allegations in an attempt to show that plaintiff has standing. Those allegations, however, reveal that the claims could not be adjudicated on a representative basis, and thus eliminate the lone basis for this Court's subject matter jurisdiction. The Amended Complaint also does not address the far more fundamental infirmities in plaintiff's claims, including her failure to identify any conduct by Cox that violates the promises it makes to its subscribers. Defendant moves to strike the class allegations, and to dismiss the Amended Complaint under Rules 12(b)(1), 12(b)(6), and Rule 9(b).

Plaintiff's purported class action is brought in this court under the auspices of the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). Plaintiff contends that Cox has damaged a subset of its internet subscribers – those who use peer-to-peer ("P2P") file sharing applications – in an amount totaling at least $5 million. Cox markets and offers a high speed internet service (the "Service"). P2P file-sharers like plaintiff allegedly need high speed to upload and download large files; and plaintiff, who likes to share large audio and video files, allegedly bought the Service expecting to enjoy those high speeds at *all times* under *all circumstances* when sharing large files.

According to plaintiff, Cox sometimes "blocks" file-sharing sessions when subscribers are using certain, unspecified P2P applications (the "Blocked Applications"). She does not say which P2P applications are the "Blocked Applications," or when and for how long this "blocking" occurs. She does say *she* uses the Blocked Applications, in a manner that did not violate her Agreement, and has experienced slow speeds when using them. As a result, she claims, Cox is not living up to its bargain. She brings this action on behalf of all Cox subscribers who use *any* P2P applications, seeking (apparently) a refund.

Plaintiff's claims should not be permitted to proceed, at least not in this Court. This Court's jurisdiction rests on the case's viability as a *class action*. Plaintiff's new "standing" allegations, however, reveal that there is *no ascertainable class*. The determination of who would have claims like plaintiff's, and who would not, would require laborious, subscriber-by-subscriber inquiries

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

about reliance, expectations, internet usage, the reasons for and severity of any service interruptions or "slowdowns," and the fact of damage. Proof that plaintiff was wronged and damaged would not establish that *anyone else* was likewise wronged and damaged. A "class" entitled to monetary relief does not exist, and, without such a class, this Court has no subject matter jurisdiction over plaintiff's claims.

Second, the Amended Complaint still fails to allege any conduct inconsistent with Cox's contractual obligations or advertisements, including the express limitations on the Service. In dismissing the original complaint, the Court held that Cox was under "no obligation . . . to provide unlimited access to its services without interruption or restriction, nor [made] a contractual promise . . . to provide unlimited P2P use by subscribers." The Amended Complaint fails to grapple with this holding. Plaintiff's claims now rest on her impression that her file-sharing activity was not occurring at the speeds Cox promised. But Cox did not promise that its subscribers would be able to share "large files" at any minimum speed or at <u>all times</u> under <u>all circumstances</u>.

Cox, moreover, never promised, and in fact disclaimed, that Lyons, or anyone else, would enjoy unlimited and uninterrupted access to any particular internet application, including P2P protocols, at any particular internet speed (or at all). It warned its subscribers that it would manage traffic on its network (including prioritizing some traffic) and it disclaimed any warranty that its network was fit for any particular purpose. Lyons seeks to rewrite the contract to impose obligations on Cox that it never assumed.

Third, plaintiff has no viable claims for unfair business practices ("the UCL"), false advertising ("the FAL"), and under the Consumer Legal Remedies Act ("CLRA"). The parties in this case entered into a fully-integrated contract that expressly disclaimed reliance on any prior representations, and that disavowed the very obligations that plaintiff suggests were implied by Cox in its advertising. A party cannot reasonably rely upon alleged misrepresentations which are directly contradicted by the terms of an applicable agreement. Cox's advertisements, moreover, do not make the promises of unlimited high-speed P2P file sharing that plaintiff seeks to read into them. They are not misleading, and provide no basis for plaintiff's statutory claims.

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

## PROCEDURAL BACKGROUND

On December 15, 2008, Cox moved to dismiss the original complaint in this action on three grounds: that plaintiff failed to state claims upon which relief may be granted, that her claims were not pleaded with the requisite factual detail, and that plaintiff had not alleged her Article III standing. On February 6, 2009, this Court granted the motion with leave to amend. February 6, 2009 Order, Docket No. 34 (the "Order").

On March 9, 2009, Plaintiff filed the Amended Complaint.[1] That pleading drops two of the original nine claims for relief – for violation of the federal Computer Fraud and Abuse Act, and for violation of other states' consumer protection laws.[2] The seven remaining claims are state law claims, seeking both individual and class relief, for (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) violations of the CLRA; (4) "fraudulent acts and practices" under the UCL, (5) violation of the FAL, (6) "unlawful" acts and practices under the UCL; and (7) "unfair" acts and practices under the UCL. In realleging those seven claims, plaintiff has made certain changes to the original pleading.

## FACTUAL BACKGROUND

### I. The Allegations Supporting Plaintiff's Class Action Allegations.

Plaintiff alleges that she is a California resident who uses Cox's residential High Speed Internet Premier with PowerBoost Package service (the "Service"). (FAC, ¶ 30.) She seeks to represent a class of Cox subscribers who, like her, use file-sharing software (hereinafter "P2P"). (*Id.* at ¶¶ 14-15.) Lyons alleges that both she, and the class she seeks to represent, purchased the Service for "personal, family, or household use." (*Id.*, ¶¶ 14-15.) Other than the vague suggestion, in paragraph 16, that class members are identifiable from Cox's "records," plaintiff does not say *how* composition of such a "consumer" class of Cox's subscribers would be

[1] The FAC and a red-line document that compares it to the original complaint (the "Redline") are attached as Exhibits 1 and 2, respectively, to Cox's Request for Judicial Notice ("RJN").

[2] The Complaint continues to include Cox Enterprises, Inc. as a defendant (FAC at ¶ 7), despite the fact that plaintiff dismissed Cox Enterprises on December 3, 2009. References to Cox Enterprises and "Defendants," plural, should therefore be stricken. FED. R. CIV. PROC. 12(f).

determined.

Plaintiff now says that she personally read and relied on Cox's "high speed" advertising. (FAC, ¶ 30.) Attempting to rectify her previous failure to allege an injury caused by Cox's alleged practice, she now claims that she experienced "severe limitations" on speed when she had utilized Blocked Applications (*Id.*, ¶ 5); and that she and the class either would not have purchased the Service, or would not have paid as much for it, if she had known that Cox impedes file sharing using the Blocked Applications. (*Id.*, ¶ 35.)[3]

Plaintiff now alleges that neither she, *nor her class members*, engage in the activities "prohibited" by Cox's contract ("the Contract").[4] (*Id.*, ¶¶ 36, 44, 53, Redline, at pp. 41:10, 42:17-19, and 46:23-24.) This means that her "class" excludes those P2P file-sharers whose sharing of "music and video" violates copyright laws, who share pornographic materials or upload inappropriate content to minors, or who use excessive bandwidth when uploading or downloading their "large" files. (RJN, Exh. C ("AUP"), ¶¶ 1, 2, 3, 4, 13, pp. 57-8.) Plaintiff does not say how the remaining P2P file sharers – her "true class" – would be identified.

Plaintiff alleges that her class has been damaged in an amount exceeding $5 million (FAC at ¶ 11). She does not say what that damage consisted of, or how "damaged" subscribers could be identified (from Cox's records, or otherwise).

**II. Cox's Advertisements Regarding Its Internet Speeds.**

The Amended Complaint recites Cox's advertisements regarding the high speeds it offers,

---

[3] Plaintiff does not provide any hint of how other subscribers who similarly experienced such a "slowdown" could be identified. And she alleges no facts suggesting that the Court could determine, on any class-wide basis, that any "slowdown" particular subscribers may have experienced resulted from Cox's (alleged) practice of sending "reset packets" to block Blocked Applications, as opposed to some other cause (such as computer problems).

[4] Plaintiff still fails to attach the four relevant agreements that comprise the Contract — the Cox Acceptable Use Policy ("AUP") Subscriber Agreement ("SA"), Terms and Conditions of Service ("T&C") and Limitations of Service (collectively, the "Contract") — to the Amended Complaint. Accordingly, we again attach them to the RJN as Exhibits C (AUP), D (SA), E (T&C), and F (Limitations of Service). Previously, the Court took judicial notice of these contract documents in considering defendant's motion to dismiss the original complaint. (Order at p. 9). *See Inlandboatmens Union of Pacific v. Dutra Group*, 279 F.3d 1075, 1083 (9th Cir. 2002).

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

including the "PowerBoost" feature of its Service. (FAC, ¶ 27.) Plaintiff claims that these advertisements gave her and other P2P file sharers the false impression that they would be able to upload and download "large files" using the "Blocked Applications" at "promised" speeds. (*Id.*, ¶¶ 27-29.) Being able to upload and download "large" music and video files at high speeds was, according to plaintiff, a "major reason" she upgraded to the Service. (*Id.*, ¶ 30.)

The advertisements themselves make no promise that P2P file sharing will always occur at the maximum speed (or at any particular speed). They state, explicitly, that PowerBoost "*temporarily*" provides speeds of "*up to* 20 Mbps for Premier Tier and 12 Mbps for Preferred Tier Customers . . . *when* extra bandwidth is available" or "*when* there is extra network capacity available." (*Id.*, ¶ 27, pp. 9:7-8, 10:3 & 10-12 (emphasis added).) The qualifier that a user will experience "up to" a particular speed (as opposed to at a "minimum" speed) is made *over 12 times* in the quoted advertisements. (*Id.*, p. 9: 2-3, 4-5, 9-10, 13, 23-25, p. 10: 5-6, 10: 19-21.)[5]

Plaintiff says that she "reasonably believed" that "each tier of the Service would provide a minimum speed that is at least as fast as the maximum speed promised for the tier below." (*Id.*, ¶ 32.) This claim lacks any factual support. Neither the advertisements nor the Contract promise any "minimum" speed.

**III. The Contract Documents: Cox's Disclosures Regarding The Limitations On Its Residential Service.**

Plaintiff acknowledges some of the express terms of the Contract. She alleges that Cox uses "standardized form contracts" that have been uniformly breached as to all class members. (FAC, ¶ 20.) Plaintiff admits that she entered into the Contract, and that Cox's subscribers must agree to the Contract as a precondition to service, and acknowledges that all of the Contract's terms are readily available on Cox's website. (*Id.*, ¶¶ 31-32.)

The Contract forbids a number of activities, including disseminating child pornography and obscene material (AUP, ¶ 2), disseminating content that infringes copyrights (AUP, ¶ 3), sending inappropriate content to minors (AUP, ¶ 4), commercial use of the Service (AUP, ¶ 5),

[5] Plaintiff no longer alleges that Cox's advertised "always-on connection" was false. (*See* Redline at p. 23: 4-6.)

operating as a "server" (AUP, ¶ 6), hacking (AUP, ¶ 7), network "flooding" (AUP, ¶ 10), transmitting a virus (AUP, ¶ 11), spamming (AUP, ¶ 12), and use that represents "an unusually great burden on the network" (AUP, ¶ 13).

Plaintiff now claims that the members of her proposed class do not engage in *any* of the activities "prohibited" by the Agreement (FAC, ¶ 36, 44), which is incorporated into every claim. (*Id*., ¶¶ 46, 55, 62, 69, 75, 82.) Taking this allegation as true, her class must consist only of those Cox subscribers who obey *all* of the restrictions spelled out in the AUP and described above.

Lyons also expressly agreed:

- that Cox may provide "Network Management" for the "greatest benefit of the greatest number of subscribers including, specifically, traffic prioritization and protocol filtering. You *expressly accept* that such action on the part of Cox may affect the performance of the Service." SA, ¶ 15 (emphasis added).

- to not consume "excessive bandwidth as determined by Cox", and "ensure that your activities do not improperly restrict, inhibit, or degrade any other user's use of the Service, nor represent (in Cox's sole judgment) an unusually great burden on the network itself." AUP ¶ 13 (emphasis added).

- that the services were provided "'AS IS' WITHOUT WARRANTY OF ANY KIND," and that Cox and its agents did not "WARRANT THE SERVICE WILL BE UNINTERRUPTED OR ERROR FREE. . [or] THAT ANY DATA OR ANY FILES SENT BY OR TO YOU WILL BE TRANSMITTED IN UNCORRUPTED FORM OR WITH IN A REASONABLE PERIOD OF TIME. ALL REPRESENTATIONS AND WARRANTIES [including] OF . . . FITNESS FOR A PARTICULAR PURPOSE AND MERCHANTABILITY ARE HEREBY EXCLUDED AND DISCLAIMED. COX . . . [is] NOT LIABLE FOR ANY COSTS OR DAMAGES, ARISING DIRECTLY OR INDIRECTLY FROM . . . THE SERVICES." SA at ¶ 13.

- that the Contract is fully integrated and "replaces any and all prior written or oral agreements." SA ¶ 20.

- that Cox "MADE NO WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING WITHOUT LIMITATIONS, ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. . . [Cox] SHALL NOT BE LIABLE FOR DAMAGES FOR . . . THE DEGRADATION OR INTERRUPTION OF ANY SERVICES, FOR ANY LOST DATA OR CONTENT. . . REGARDLESS OF CAUSE." Exh. E, T&C, ¶ E.

- that Cox "reserves the right to enforce limits on specific features of the Service," that the "Maximum download and upload speeds vary by community." Limitations of Service.

The Amended Complaint, like the original complaint, ignores these contractual terms.

**IV. Cox's Practices And Plaintiff's Alleged Injury.**

The Amended Complaint focuses on the general effect of Cox's practices on the "Blocked Applications," rather than on any problems Lyons personally experienced using the Service. It

Coblentz, Patch, Duffy & Bass LLP
One Ferry Building, Suite 200, San Francisco, California 94111-4213
415.391.4800 · Fax 415.989.1663

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

complains that Cox "selectively target[s] and impair[s] use of the Blocked Applications" by sending "reset" packets to computers that impair or terminate their file-sharing sessions. (FAC, ¶ 38.) It is impossible to determine, from the pleading, whether this lasts for a microsecond, or for an hour, and whether the computer's user has any subjective knowledge that the interruption has occurred. Plaintiff conclusorily states the impairment "harms" P2P users, generally, "without any corresponding benefit to the rest of" Cox's subscribers. (*Id.*, at ¶ 33.) The interruptions allegedly occur "irrespective of bandwidth, " and are thus (allegedly) unjustified from a network management perspective (*Id.*, ¶ 1, 33). Plaintiff, however, provides no information about what does, and does not, "trigger" the reset packets.

Lyons does not say when she signed up for the Service, when she discovered the speeds were "slower" than she expected, or whether, after discovering that Cox "blocks" the "Blocked Applications," she discontinued the Service. She never says *how* "large" the files were that she tried to share, or that she was ever actually "blocked" from sharing any data.

## ARGUMENT

### I. PLAINTIFF'S ALLEGATIONS AND JUDICIALLY NOTICEABLE FACTS DEMONSTRATE THAT THE COURT'S SUBJECT MATTER JURISDICTION IS QUESTIONABLE.

If the face of the pleadings reveal that an action cannot lie as a class action, or that the alleged class is overbroad, striking the class allegations at the pleading stage is appropriate. *Sanders v. Apple, Inc.*, 2009 WL 150950, *10 (N.D. Cal. 2009). If made at the pleading stage, such a motion is governed by the same standard governing other pleading motions, namely Rule 12(b)(6). *Picus v. Wal-Mart Stores*, __ F.Supp.2d __, 2009 WL 667419, *3 (D.Nev. 2009).

Where doubt is raised as to the court's subject matter jurisdiction, however, the court may look to facts beyond the face of the pleadings to determine whether it has jurisdiction to proceed. *Hoffman v. Cingular Wireless, LLC*, 2008 WL 4093722, at *3-4 (S.D.Cal. Sept. 4, 2008). Moreover, a district court is not required to accept as true conclusory allegations that are contradicted by documents referred to in the complaint. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998). Here, the question of the viability of the "class" claims and the question of the court's subject matter jurisdiction are intertwined: there is no federal subject

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

matter jurisdiction without viable "class" claims. It is thus an important threshold issue.

**A. If The Class Allegations Fail To Allege A Certifiable Class, The Entire Action Should Be Dismissed For Lack Of Subject Matter Jurisdiction.**

This action is in federal court *only* because it alleges claims for class-wide relief and seeks an aggregate of $5 million in damages. (FAC, ¶ 11.) It no longer involves a claim under federal law; the sole basis for federal court jurisdiction is the Class Action Fairness Act, codified at 28 U.S.C. section 1332(d)(2). (*Id*.) Because this Court's subject matter jurisdiction depends on this case's viability as a class action with at least $5 million in controversy, it is appropriate to examine, at the outset, and under the auspices of Rule 12(b)(1), whether the pleading in fact fails to allege an ascertainable class, and/or discloses other reasons (such as unmanageability, or lack of typicality) that would demonstrate that the case cannot proceed as a class action.

**B. Discovery Is Unnecessary To Determine That Individualized Proof Would Be Required To Ascertain Effects in Plaintiffs' Class Allegations.**

Discovery is often necessary to determine the existence of a class, but that is not always the case. *Picus*, 2009 WL 667419, *2-3; *see also Bessette v. Avco Fin. Servs., Inc.* 279 B.R. 442, 450 (D.R.I. 2002) (cited in *Picus*.) "If, as a matter of law, a class cannot be certified . . . it would be a waste of the parties' resources and judicial resources to conduct discovery on class certification." *Id., quoting Walls v. Wells Fargo Bank, N.A.,* 262 B.R. 519, 523 (Bankr. E.D. Cal. 2001), *and citing Vinole v. Countrywide Home Loans, Inc.*, 246 F.R.D. 637, 639 (S.D. Cal. 2007) ("[A] defense-driven determination of class certification is appropriate when awaiting further discovery will only cause needless delay and expense.").

This action is one of the relatively rare cases in which the court *can* determine, from the face of the pleadings and the nature of the allegations, and without discovery or evidence, that there is no ascertainable class that could be certified, that individualized issues will necessarily predominate over common issues, and that class adjudication would not be superior (and, in fact, would be wholly unmanageable).

**1. Only A Small Subset of Cox's Subscribers Would Possess Claims Like Plaintiff's. That Subset of Subscribers Could Not Be Identified Without Conducting Thousands of Individualized "Mini-Trials."**

To cure the standing problems that infected her original complaint, plaintiff added some

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

specific allegations about her *own* conduct, her own motivations and reliance, and her own disappointment with the Service (*e.g.*, FAC, ¶ 5; Redline, p. 29: 13-15). She now alleges that her own purchase decision was influenced by Cox's advertising. (*Id.*, ¶ 30.) To establish the "caused loss" required as an element of all of her claims, she broadly alleges that she would not have purchased the Service at all or, at a minimum, would not have been willing to pay as much for it, if she had "known" that Cox "routinely block(s) and impair(s) use of the Blocked Applications." (*Id.*, ¶ 35.) And to establish that she has performed her contractual obligations, such that she has personal standing to pursue contract-based claims against Cox, she now says that she has not used the Service for "activities prohibited by the Agreement." (*Id.*, ¶¶ 36, 44, 53.)

These new allegations fill in *some* of the gaps in her previous pleading, and begin to describe a subscriber with at least a potential or hypothetical claim. But the more particularized description of *her* claim reveals a mismatch between her claim and the "class" claim.

The class plaintiff describes would include any Cox subscribers who purchased "the Service for personal, family and/or household use during the applicable statute of limitations [period] and used or attempted to use peer-to-peer or online file sharing applications," except for class members affiliated with Defendant or the Court. (*Id.*, ¶¶ 14, 15.) Plaintiff conclusorily alleges that this class is "ascertainable from [Cox's] records." (FAC, ¶ 16.)

Even assuming the truth of the implausible allegation that someone could determine, from Cox's records, which subscribers to its Service purchased the Service only for "personal, family, and/or household use," and "used or attempted to use" the Service for P2P file sharing, plaintiff's broad class of P2P users would *not* possess the same claims *plaintiff* is asserting in this action, as it would include class members who did *not* rely on the advertisements or care about restrictions on P2P file sharing (as plaintiff allegedly did), who were *never* damaged or affected by Cox's practices (as plaintiff allegedly was), and who were *not* otherwise entitled to any relief from Cox (because they, unlike plaintiff, did not comply with the use restrictions in the Contract, because Cox had some other contractual entitlement to interrupt their service, or because any interruption was not due to the challenged conduct). Only a tiny fraction of the class (as defined in paragraphs 14 and 15) would possess claims like plaintiff's, and *that* fraction clearly could not be

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

"ascertained" from Cox's "records." An examination of *each* such subscriber's motivations, conduct, and experience with the Service would be required.

On this ground, the class definition should be stricken, as it is clearly overbroad. *See, e.g., Akkerman v. Mecta Corp., Inc.*, 152 Cal. App. 4th 1094, 1100-1101 (2007) (class overbroad where it would include patients not deceived, and where plaintiff offered no way to identify "deceived" members of the class). More importantly, however, no amendment could cure the "ascertainability" and "manageability" issues that proceeding with these claims on a class-wide basis would present. Defining the class more narrowly – to include only that fractional subset of Cox subscribers who do possess potentially viable claims – would generate the need for thousands of minitrials to determine *membership* in such a class. In these circumstances, it is entirely appropriate to determine, now, that plaintiff's purported "class action" is not a class action at all. *See, e.g., Stubbs v. McDonald's Corp.*, 224 F.R.D. 668, 674 (D.Kan. 2004) (motion to strike is proper means to test viability of proposed class at the earliest pleading stage of the litigation).

**2. Individualized "Reliance" Issues Preclude Certification of A Class.**

The question of proving who (among all of Cox's subscribers) saw, heard, and, more importantly, *relied* on false advertising – that is, would have found the allegedly omitted information regarding impediments to P2P file sharing "material" – would present the need to determine the individual motivation of each "class member" when he or she purchased the Service. As *Picus* held only last month, a subscriber who did not see allegedly deceptive advertisements in question, or who would not have been deterred from purchasing the service if he was provided the omitted information, would not possess a claim, as, for those members, causation and reliance would be lacking. *Picus*, 2009 WL 667419, *8. To determine which class members did and did not possess a claim, individualized inquiries would be necessary: "The Court would have to consider whether each class member relied on or even saw the "Made in the USA" label when purchasing Ol' Roy products, as well as what damage each class member incurred as a result of that reliance." *Id.*

Plaintiff's allegations of the "pervasiveness" of the advertisements, and her suggestion that all members of the class were ignorant of "omitted" information, do not solve the *reliance* issue in

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

this case. That is because plaintiff's pleading does not permit an inference that there is an *identifiable* subset of Cox subscribers for whom that omitted information would have made a *difference*.

This issue was at the core of the Ninth Circuit's widely-cited decision in *Poulos v. Caesar's World*, 379 F.3d 654 (9th Cir. 2004). *Poulos* involved a claim that slot machine and video poker players were misled by the appearance, workings, and "trade dress" of the machines to believe they functioned like their "traditional" counterparts, and that the defendants, by not disclosing that the machines functioned at the predetermined directions of computer programs, uniformly misled *every person who played the machines*. *Id.* at 661. The Ninth Circuit held that the enormous proposed class – all gamblers who had played those machines – could not be certified because determining membership in a properly defined class would require an exploration of the individual sophistication, motivations, and expectations of *each purported class member* in playing the slot machines. *Id.* at 665-666, 668; *see also Akkeman*, 152 Cal. App. 4th at 1100-1101.

Similarly, in January, Judge Fogel, in *Sanders*, granted a pleading motion – to strike class allegations – in a fraud and breach of warranty action against Apple based on sales of its iMac computer. Finding that reliance was a "necessary element" of the claims, and that all members of the class would need to prove it, the court decided that it would have to inquire into the "specific facts surrounding each buyer's transaction": "If the proposed class were to be certified, the Court would be forced to engage in individual inquiries of each class member with respect to the materiality of the statement, whether the member saw Apple's advertisements or visited Apple's website, and what caused the member to make the purchase.[6] 2009 WL 150950, *10.

This case presents the precise same "individual motivation" issues that the *Poulos* and *Sanders* cases did. As this Court has already found, personal reliance and causation are likewise

---

[6] The California Supreme Court is currently considering similar questions. It granted review of *Pfizer Inc. v. Superior Court*, 141 Cal. App. 4th 290 (2006), *rev. granted and depublished*, 51 Cal. Rptr. 3d 707 (Cal. Nov. 1, 2006), and similar cases addressing the appropriateness of class treatment of claims requiring individualized reliance on advertising. The California Supreme Court has not yet ruled in *Pfizer*. However, the Court of Appeal ruling that it is considering is entirely consistent with the Ninth Circuit's holding in *Poulos*, and with *Sanders* and *Picus*.

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

necessary elements of plaintiff's CLRA, FAL, and UCL "deception" claims. (Order, pp. 5-7.) Taking as true plaintiff's new claims that *she* was "misled" by Cox's advertising, and that the "omitted" information mattered *to her*, how would a court, without individualized inquires of every class member, determine that any *other* Cox subscriber was so misled?[7]

**3. Identifying Which Class Members Suffered Injury or Damage Would Likewise Require Individualized Minitrials.**

The reliance issue presents only the first of several insuperable problems with maintaining this case as a class action. Even if the Court were to assume that all P2P users do care on some level about Cox's practice, how would the Court determine which subscribers were *injured* by it?

No inference would be permissible from the Amended Complaint that *all* P2P users would have rejected the service and thereby avoided economic loss if they had known the "truth." *Plaintiff* does not even allege that *she* has cancelled the service since learning of Cox's practice. She alleges, moreover, that Cox enjoys a "virtual monopoly" for "cable high speed service" in many markets it serves. (FAC, ¶ 31.) From all that appears in the Complaint, many subscribers who have P2P software on their computers would have bought the Service anyway, even with *very* explicit descriptions of how Cox's management of the Service might effect *certain* P2P protocols. And there would be *no* way to determine which subscribers fall into that category without

---

[7] Among other thorny "reliance" questions presented by this case is the question of how a court would determine who, among the class members, was in fact *ignorant* that Cox (allegedly) sometimes impedes some P2P file sharing in order to prioritize internet traffic on its network. Class members who knew about or suspected the practice, due to publicity about it, or otherwise – that is, who were not fooled in any way – would have no personal entitlement to any relief under plaintiff's false advertising, UCL, or CLRA theories. *Caro v. Procter & Gamble Co.*, 18 Cal. App. 4th 644, 668 (1993). Nothing in plaintiff's complaint suggests any mechanism for "weeding out" those savvy class members from the larger class of deceived P2P users. *Akkeman*, 152 Cal. App. 4th at 1100-1101 (affirming denial of class certification where plaintiff's class would include persons not deceived, and plaintiff offered no "weeding out" mechanism).

Determining which P2P file users in fact have "deception" claims against Cox is a critical question. Rule 23 cannot be used to alter substantive rights, nor to force a defendant to defend against a "fictional composite class." *Gartin v. S & M Nutec LLC*, 245 F.R.D. 429, 442 (C.D. Cal. 2007) (*citing Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997).) "As a result, the burden of proof must be satisfied with regard to each class member's claim – thus requiring that liability and damages be proven on an individual basis." *Gartin*, 245 F.R.D. at 442 (rejecting class treatment of CLRA, negligence, and UCL claims based on marketing of dog treats).

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

"minitrials."[8]

As *Poulos* explained, where the *only* "logical" reason for a consumer's purchase decision is that they were ignorant of allegedly omitted and highly material information – that is, where there is a clear and logical inference that the consumer would not have purchased if the omitted information had been known – a class-wide inference of that purchase decision resulted from the "deception" may be appropriate. *Poulos,* 379 F.3d at 668. But such an inference is no more appropriate here than it was in *Poulos*. On the facts pleaded, nothing suggests that any subscriber (even plaintiff) would have found the omitted information "material" enough to have any impact on the decision to purchase, or to continue, Cox's high-speed service.[9]

Second, the impossibility of determining who, among the arcane subclass of Cox subscribers who use P2P file sharing software, was actually affected by the practice – that is, suffered any negative impact in *their* personal use of the service as a result of the challenged "reset packet" practice – would render class certification wholly inappropriate. While differences in the *amount* or *kind* of damage may not necessitate denial of class certification, where the *fact* of damage to each member cannot be presumed, the class becomes unmanageable.

[8] Plaintiff says that a "major" motivation for *her* purchase of the high-speed service was the ability to "upload and download large files, such as music and video files" using P2P software. (FAC, ¶ 30.) But nothing suggests that *all* of Cox's high-speed subscribers who use P2P applications – which is plaintiff's class – had the same motivation. A single (but quite realistic) example demonstrates this. A Cox subscriber who purchased the Service to get the maximum speeds possible for streaming live news coverage from CNN's website, or for researching recipes (none of which involves peer-to-peer file sharing), might have only the dimmest awareness of what P2P file sharing is, and might be unaware that her *thirteen year old child* has downloaded free P2P software. *That* subscriber would not claim that using P2P software was a "major" reason for buying the Service, or that she would not have paid for the Service if she'd "known" that Cox interrupts P2P file sharing. She might even *applaud* Cox's practice, because she might not want her computer (and its memory) used to download and store large music and video files. She might also (rightly) be concerned that her child's sharing of "music and videos" could expose *her* to penalties for violating the Copyright Act (17 U.S.C. §§ 101 *et seq*.); *see also MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 940 (2005) (noting that the peer-to-peer application at issue in that case involved copyright violations on a "gigantic scale.") Would *that* Cox subscriber be in plaintiff's "class," as plaintiff conceives it? If not, how, short of deposing every subscriber, would that subscriber be *excluded*?

[9] No "presumption of reliance" would be applicable in this case, which involves both omissions and claimed affirmative misrepresentations. *Gartin*, 245 F.R.D. at 438, *citing Poulos, supra*, 666.

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

*Wilens v. TD Waterhouse*, 120 Cal. App. 4th 746 (2003) exemplifies why a determination of "the fact of damage" on a class-wide basis from a service interruption may not be possible. There, plaintiff complained that TD Waterhouse's practice of suddenly and without notice suspending trading privileges damaged him, as *he* was prevented from trading out of stocks when he attempted to, and suffered true monetary loss as the stocks dropped in price (while he helplessly looked on). *Id.* at 750. He said that a contract provision allowing such "without notice" suspensions was unconscionable, and sought to certify a class of every TD Waterhouse customer who was a party to the contracts or who had their trading suspended. Although plaintiff himself could demonstrate that *he* was damaged and had standing, and although the question of the contract's unconscionability was a common one, the Court of Appeal affirmed the denial of class certification, because determining membership *in the class* would have required a "minitrial" as to whether each other class member suffered trading losses or was *undamaged* by a temporary trading suspension.

The court held that "the individual issues here go beyond mere calculation; they involve each class member's *entitlement* to damages." *Id.* at 756. It explained that each member "would be required to litigate 'substantial and numerous factually unique questions to determine his or her individual right to recover,' thus making a class action inappropriate." *Id.* (emphasis added).

> Unlike some class actions, this case does not lend itself to the presumption that each class member suffered damage by the mere insertion of the termination without notice provision in the webBroker agreement. Nor can we presume that those in the subclass, i.e., those whose access was terminated without notice, suffered damage caused by the termination.

*Id.* at 755.

This case will present the "who was damaged" question presented by *Wilens* (as well as the "who was deceived" problem presented by *Poulos*). *Lyons* claims to have experienced slower speeds than she expected, and feels that *she* was "damaged" by that in some way. Assuming she could prove that, nothing suggests that there is any objective way, short of "minitrials," that other

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

"damaged" P2P file sharers could be identified.[10]

**4. Other Individualized Factual Determinations Relating to Membership In The Class Would Swamp Common Issues And Render The Case Wholly Unmanageable.**

Aside from individualized reliance and damage issues described above, which would necessarily create the need for subscriber-by-subscriber inquiries, plaintiff's new personal standing allegations create a host of other and even more intractable issues. Plaintiff now pleads that, while she and her fellow class members use the service to "upload and download large files, such as *music and video*," she and other members of her class do *not* engage in "activities prohibited by the Agreement." (FAC, ¶¶ 24, 36, 44, 53.) Notably, the Agreement expressly prohibits, among other things, disseminating content that infringes on copyrights (AUP, ¶ 3), transmitting slanderous, illegal, obscene, or other offensive material (AUP, ¶¶ 1, 2), and disseminating indecent and appropriate materials to children (AUP, ¶ 4). How, other than through a highly intrusive, individualized examination of what files were shared by each individual P2P user, could the Court identify who, and who did not, engage in those prohibited activities, such as to determine membership in the class?[11]

And that inquest into the internet usage habits of thousands of Cox customers (assuming it were legally permissible, *and* technically feasible) would not be the end of the inquiry. The court

[10] Lyons alleges that Cox's practice affects "certain," unspecified, "selectively targeted" P2P applications, which she refers to as the "Blocked Applications" in the remainder of her pleading. (FAC, ¶ 1.) She does not confine her *class* to users of the "Blocked Applications," however; her class includes *anyone* who "used or attempted to use P2P" applications and Lotus Notes (including, apparently, applications that are not "blocked"). (FAC, ¶¶ 11, 14-15.) Nor does she confine her class to those who have actually experienced an impediment or slowdown, or any monetary loss. (*Id*.) In that respect, the "class" issue here is identical to that presented by the *Wilen*s action.

[11] A class of persons who use P2P file sharing software to share "music and video" but never infringe the Copyright Act would, if the *Grokster* case is any indication, be terribly hard to identify, and would be a very small subset of P2P file-sharers. (See footnote 7, *supra*.) Although such subscribers arguably exist in theory, identifying them would be like looking for the proverbial needle in the haystack. That subclass would grow smaller still if, after excluding "copyright infringers," the class also excluded those whose voluminous file sharing exceeded Cox's bandwidth limitations (AUP, ¶ 13), were sharing obscene or inappropriate materials with minors (AUP, ¶¶ 1, 2), and made any commercial use of the Service (such as advertising a business) (AUP, ¶ 5).

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

would next need to determine whether, on the occasions a class member's service "slowed down," or was interrupted, the *cause* of that slow down or interruption was *Cox*'s (alleged) practice of interrupting file sharing, or some *other* cause (such as network congestion, power surges or outages, the individual's computer malfunctioning, a virus, or any number of other issues). Mere testimony from a class member that her service seemed "slow," or "wouldn't work" would *not* establish that *Cox* had impeded her file-sharing using "reset packets." Once again, a subscriber-by-subscriber inquiry would be required to determine *whether* Cox damaged that subscriber, not just the "amount" of damage it caused. *Wilens, supra,* at 755.

Finally, even if plaintiff could prove that a service interruption or slowdown *was* the product of Cox's practice, a question would arise in every instance whether that particular interruption was expressly *permitted* under Cox's contract (because, for example, the subscriber was exceeding bandwidth limitations at the time). Cox's contract expressly preserves Cox's right to interrupt service and prioritize traffic for specified reasons. The question of whether a "breach" occurred as to other subscribers simply could not be adjudicated through proof of a "representative" claim. *See, e.g., Leonard J. Klay v. Humana, Inc.*, 382 F.3d 1241, 1264 (11th Cir. 2004) (no class certification because determining whether each class member's contract had been breached would not be "subject to generalized proof."); *Edwards v. First Am. Corp*., 251 F.R.D. 454, 458 (C.D. Cal. 2008) (decertifying class action where adjudicating contract claims would require "a great deal of individualized proof").

Class actions exist to promote efficiency. They allow the claims of many people to be adjudicated by trying *one* representative claim, or a few representative claims. They are not supposed to multiply a *single* complaint into thousands of evidentiary proceedings involving examinations into the expectations, motivations, and private conduct of a large group of absent class members. Here, permitting plaintiff to transform *her* gripe about Cox's network management practice into a "class" claim would have exactly that effect. This Court should determine, at the threshold of this action, that this case is not suitable for class adjudication for that reason, and strike the class allegations from the Amended Complaint. FED. R. CIV. P. 12(f); *Stubbs*, 224 F.R.D. at 671. And, if it does so, it should dismiss the action, as, without a viable "class" claim

putting at least $5 million in controversy, there is no remaining basis for federal subject matter jurisdiction.

**II. PLAINTIFF HAS STILL FAILED TO STATE ANY CLAIM FOR RELIEF.**

"A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare System, L.P.*, 534 F.3d 1116, 1121-22 (9th Cir. 2008). [A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

Where, as here, plaintiff's allegations are contradicted by the express terms of the contracts or documents referred to in the complaint, the documents should trump the allegations, and the claims for breach of contract and inadequate disclosure should be dismissed. *In re Stac Electronics Securities Litigation*, 89 F.3d 1399, 1403 (9th Cir. 1996) (affirming district court's dismissal of securities laws claims for alleged material omissions of fact where the omitted matters had been adequately disclosed in the prospectuses referenced in the complaint); *Warren v. Fox Family Worldwide, Inc.*, 171 F.Supp.2d 1057, 1070-71 (C.D.Cal. 2001). Plaintiff's claims should be dismissed.

**A. <u>The Contract-Based Claims Remain Insufficiently Plead.</u>**

In granting Cox's first motion to dismiss, the Court held that plaintiff failed to plead a breach of contract claim and breach of the implied covenant of good faith and fair dealing because Cox was under "no obligation . . . to provide unlimited access to its services without interruption or restriction, nor a contractual promise . . . to provide unlimited P2P use by subscribers," (2) Cox "had the right to manage its network for the greatest benefit of the greatest number of subscribers . . . [including for] traffic prioritization, and protocol filtering", and (3) that plaintiff was not allowed under the contract to use excessive bandwidth " . . . as determined by Cox." (Order at ¶ 10-11; *see* AUP ¶¶ 1, 13, SA ¶¶ 6, 15.) In her amended pleading, Plaintiff tries to sidestep these rulings by conflating the maximum download speeds identified in the Limitations of Service as the "promised" or "specified" speeds. (FAC, ¶¶ 32 & 43.) The Contract, however, says no such thing.



COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

*See, e.g.*, *Steckman*, 143 F.3d at 1295-96 (holding where a conflict between the bare allegations of the complaint and any exhibit attached, the exhibit prevails).

Lyons, who admits she downloads and uploads "large" music and video files, also thinks that Cox selectively targets and impairs the Blocked Applications "irrespective of bandwidth." (FAC, ¶ 33.) This is speculation and argument, not a factual allegation. It is also a dubious proposition. *See, e.g.,* Matthew Helton, *Secondary Liability for Copyright Infringement: BitTorrent as a Vehicle for Establishing a New Copyright Definition for Staple Articles of Commerce*, 40 Colum. J. L. & Soc. Probs. 1, 22-23 (2006) (describing how "the costs of increased Internet traffic and bandwidth usage" are absorbed entirely by ISP providers, such as Cox). [12]

To be entitled to damages for breach of contract under Georgia law,[13] a plaintiff must plead "(1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." *Kuritzky v. Emory Univ.*, 294 Ga. App. 370, 371 (2008). Additionally, the breach must be "must be more than *de minimus*" and plaintiff must allege that she complied with "the terms of the contract." *Id*.

**1. Plaintiff Fails to Allege That Cox Breached An Actual Provision of the Contract.**

The four documents comprising the Contract are filled with restrictions and limitations of on how the Service may and may not be used, and that qualify Cox's obligations. The Contract supersedes all prior written or oral agreements. (SA, ¶ 20.) The contract claim is now premised on one allegation – that Defendants promised to provide unlimited "high speed access to the internet for uploads and downloads at specified speeds." (FAC ¶ 43.) But no provision of the Contract promises minimum speeds or unlimited access.

Plaintiff argues either (a)that the "maximum speeds" provided under a particular tier of

---

[12] Plaintiff does not allege, factually, that Cox slowed down *her* Service *because she* was using a Blocked Application, or irrespective of *her* bandwidth usage. She only alleges that Cox blocks file sharing sometimes, in unspecified circumstances, and that she herself has experienced slower speeds than *she* expected. These allegations do not add up to any breach of contract claim.

[13] RJN, Exh. D (SA), at ¶ 19, p. 68 ("This Agreement shall be exclusively governed by, and construed in accordance with, the laws of the State of Georgia . . .").

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

Service are reasonably viewed as the "specified" speed or (b) that the maximum speed of one tier would be the "minimum" speed for the next highest tier. (*Cf.* FAC, ¶¶ 32, *to* 43-44.) That would mean, for example, that the promised speed for the Premier package would be either 5 to 9 megabits or 10 to 20 megabits per second. (*Id.*, ¶¶ 32, 43 & 44.) Putting aside the contradictions between these presumptions, the Contract says only identifies "maximum" for a particular tier, in the "*Limitations* of Service," and specifies that they are "approximations" and may "vary." (RJN, Exh. E). The Contract makes no promise of a minimum speed under any tier and explicitly disclaims continuous use and any particular speed for any transmitted file. These specific contract limitations govern over plaintiff's contradictory allegations. *Myung-Sung Presbyterian Church v. North American Ass. of Slavic Churches & Ministries, Inc.*, 662 S.E.2d 745, 748 (Ga.App. 2008) (question whether obligation can be fairly implied from contract is for court to decide).

Moreover, plaintiff waived any claim she might have against Cox for her dissatisfaction with the speed. The Subscriber Agreement and the Terms and Conditions conspicuously disclose that the service is provided "AS IS", and that Cox does not warrant that the Service will be "UNINTERRUPTED", that "ANY FILES SENT BY OR TO YOU WILL BE TRANSMITTED IN UNCORRUPTED FORM OR WITH IN A REASONABLE PERIOD OF TIME, or that it will be fit "FOR A PARTICULAR PURPOSE. SA at ¶ 13 and T&C ¶ E. Subscribers agree that Cox will not be liable for the "DEGRADATION OR INTERRUPTION OF ANY SERVICES. . . REGARDLESS OF CAUSE." RJN, Exh. E, p. 70, T&C at ¶ E.

Cox's warranty disclaimers and damages waivers are enforceable under Georgia law. *McCrimmon v. Tandy Corp.*, 414 S.E.2d 15, 18 (Ga.App. 1991); *Meadow River Lumber Company et al. v. University Of Georgia Research Foundation, Inc.*, 503 S.E.2d 655, 659-61 (Ga.App. 1998). In the face of Cox's clear and conspicuous contractual disclaimers, Lyons (and her class) have no potential contract claim.

Plaintiff also authorized Cox to monitor and manage its network in a manner that benefits the greatest number of its subscribers, including to conduct "rate limiting," "traffic prioritization," and "protocol filtering." (SA, ¶ 15.) The Contract grants Cox the "*sole discretion*" in its "*sole judgment*" to determine when usage is "excessive" or presents a burden to the network. (AUP

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

¶¶ 6-14.)[14] Under Georgia law, a party that has an express right to use its "sole discretion" with respect to its performance *cannot* be found to have breached the contract as a result of exercising such discretion. *Automatic Sprinkler Corp. v. Anderson*, 257 S.E.2d 283, 285-286 (Ga. 1979); *Comm. Network Servs., Inc. v. MCI Worldcom Comm., Inc.*, 573 S.E.2d 461, 464 (Ga.App. 2002); *Mustaqeem-Graydon v. Suntrust Bank*, 573 S.E.2d 455, 460-61 (Ga.App. 2002).

Assuming the truth of the claim that Cox was "targeting" P2P applications and impairing their use "irrespective of bandwidth," Lyons authorized Cox to do so – to use its sole judgment as to what was best for *its* subscribers (as a whole) and *its* network. That authorization negates her claim that Cox has breached the Contract in managing its network through the mechanism of interrupting "targeted" file-sharing sessions.

**2. Plaintiff Does Not Allege Any Damage.**

Plaintiff's contract claim also fails to articulate a measurable form of damages. Plaintiff alleges, conclusorily that she and the class "were damaged" as a result of the reset packets, but nowhere specifies what "loss" in fact occurred (of psychic enjoyment?). Was there any monetary loss? What kind?

**3. There Is No "Stand-Alone" Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing.**

The implied covenant of good faith and fair dealing "does not stand independent of the contract." *Med South Health Plans, LLC v. Life of South Ins. Co.*, 2008 WL 2119915, at *5 (M.D.Ga. 2008). Since Lyons cannot show that the underlying contract has been breached, she also "cannot prevail on a cause of action based on [defendant's] failure to act in good faith in performing the contract." *Heritage Creek Dev. Corp. v. Colonial Bank*, 601 S.E.2d 842, 847 (Ga.App. 2004). In

[14] The Amended Complaint continues to imply that the Court can ignore contractual provisions because Cox did not force plaintiff to read the Contract, because it was non-negotiable, or because certain terms were allegedly "buried" in the agreement on Cox's website. (FAC, ¶ 31.) Georgia law does not allow parties to a contract to avoid the actual terms so easily. To urge that a contract cannot be enforced because a customer was misled about its provisions requires that the customer prove that she was *deprived of an opportunity to learn of the contract's contents*. *Hovendick v. Presidential Fin. Corp.*, 497 S.E.2d 269, 272 (Ga.App. 1998). Plaintiff neither alleges that here, nor could allege it. She admits she and other subscribers were pointed to the contract and had the opportunity to read it before executing it. (FAC, ¶ 31.)

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

addition, because the Complaint fails to identify any specific contractual provision from which the implied covenant of good faith and fair dealing allegedly arose, her claim for breach is subject to dismissal. *See, e.g., Inter-Mark-USA, Inc. v. Intuit Inc.*, 2008 WL 552482, at *6-7 (N.D.Cal. 2008); *Love v. The Mail on Sunday*, 2006 WL 4046180, at *7 (C.D.Cal. 2006). In its Order, the Court held that "[p]laintiff's claim for breach of the implied covenant rests mainly on alleged advertisements by Cox and not on the contractual provisions of the various agreements to which Plaintiff agreed when she subscribed to the service." The Amended Complaint fails to address this problem; it still fails to allege a contractual promise that Cox breached.

In addition, where the "agreement by its express terms grants a party absolute or uncontrolled discretion in making a decision, then no duty of good faith is implied as to that decision." *Hunting Aircraft, Inc. v. Peachtree City Airport Authority*, 636 S.E.2d 139, 141-42 (Ga.App. 2006). Plaintiff agreed that Cox could use its "sole judgment" to decide whether a use represented an "unusually great burden on the network."[15]

**III. PLAINTIFF'S FALSE ADVERTISING ALLEGATIONS DO NOT STATE A CLAIM UNDER THE UCL, FAL, OR CLRA.**

Plaintiff's claims for violation of the UCL (Cal. Bus. & Prof. Code §§ 17200 *et seq.*); the FAL (Cal. Bus. & Prof. Code §§ 17500 *et seq.*), the CLRA (Cal. Civ. Code §§ 17500 *et seq.*), alleged in the third through seventh claims for relief should be dismissed.

**A. <u>The Binding Contract Bars Plaintiff's UCL, FAL and CLRA Claims</u>.**

The UCL, FAL and CLRA claims based on "false advertising" fail because plaintiff's amended pleading fails to identify one representation promising unlimited and uninterrupted internet access at continuous, *specific* internet speeds. Even if the advertisements could be construed to make that promise – which they plainly can't – the fully integrated Contract dispelled

---

[15] Again, even assuming that Cox has impeded Lyons's service "irrespective of bandwidth," Lyons agreed that Cox could make the determination of what traffic should be prioritized. She agreed that that could affect her use of the Service, and she agreed that Cox was not warranting the fitness of the Service for a "particular use." In this circumstance, the breach of the implied covenant claim cannot lie. *Kinderstart.com LLC v. Google, Inc.*, 2006 WL 3246596, *12-13 (N.D.Cal. July 13, 2006) (where advertisements regarding certain types of services were explicitly disclaimed in contract, an implied covenant of good faith and fair dealing claim could not lie).

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

any such expectation and specifically disclosed the opposite.

A party cannot reasonably rely upon alleged misrepresentations which are directly disclaimed by the terms of an applicable agreement. *Brinderson-Newberg Joint Venture v. Pac. Erectors*, 971 F.2d 272, 281-82 (9th Cir. 1992); *Freeman v. Time, Inc.*, 68 F.3d 285, 289-90 (9th Cir. 1995) (upholding dismissal UCL, FAL, and CLRA claims challenging statements made in sweepstakes promotional materials because a reasonable consumer was not likely to be misled in light of qualifying language that appeared multiple times in the materials); *Jackvony v. Riht Financial Corp.*, 873 F.2d 411, 416 (1st Cir. 1989) (misrepresentation claims barred because there was no statement upon which plaintiff "*could reasonably rely*" as to how long defendant-hospital would run operations in light of fully integrated contract that contradicted prior representations).

This Court very recently dismissed a plaintiff's UCL and FAL claims based upon omissions and misrepresentations made prior to entering into a fully integrated contract, where the contract disavowed prior misrepresentations, generally, as well as dispelled the specific expectations at issue in the contractual terms. *SDMS, Inc. v. Rocky Mt. Chocolate Factory, Inc.*, 2008 WL 4838557, *14-15 (S.D. Cal. 2008) (Miller, J.); *Overturf v. Rocky Mt. Chocolate Factory, Inc.*, 2008 U.S. Dist. LEXIS 91135 (C.D.Cal July 21, 2008). *SDMS* and *Overturf* involved individual franchisees suing the same defendant-franchisor of retail stores that sell gourmet chocolates. Defendant moved to dismiss the claims – for breach of contract and alleged misrepresentations made by defendants prior to plaintiffs' signing the franchise agreement – on the grounds that there was an explicit disclaimer of any prior representations in the agreement and that defendants explicitly stated that they made no promises as to plaintiff reaching projected sales volumes, and were not assuming responsibility for a franchise's overall success. Both courts agreed and dismissed the UCL, FAL and CLRA claims. *SDMS*, *supra*, at *14-15; *Overturf*, *supra*, at *14-16.

The claims here should be dismissed on the same grounds. The advertisements Lyons recites in the Amended Complaint contain numerous qualifications, *e.g.* that the PowerBoost service was temporary and not consistently available. None of them suggests a user will experience the fastest possible internet speed at all times or will consistently be able to do so when using P2P applications. Moreover, the Contract forewarns subscribers that the Service is provided

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

"AS IS", might be interrupted or even *suspended* by Cox if, in Cox's sole judgment, bandwidth consumption or other activities unduly burden the system, and warns prospective customers that Cox will prioritize traffic on its network and otherwise take measures to protect the majority of its subscribers from "the few." (AUP ¶ 13; SA ¶ 13, 15.) Plaintiff "expressly accept(ed)" that Cox's network management by Cox "may affect the performance of the Service." (SA ¶ 13.)

Cox also expressly *disclaimed* any warranty that its residential service would be "uninterrupted", that any "data or files sent by or to you will be transmitted in uncorrupted form or within a reasonable period of time", or that its residential service was fit for a "particular purpose." (SA ¶ 13, T&C ¶ E.) In light of these and the other disclosures in its SA, AUP, and other materials, and the lack of *any* (alleged) advertising contradicting them or making any promise of uninterrupted or unimpeded service, Plaintiff cannot state a claim under the UCL, FAL, or CLRA as a matter of law. *Brothers v. Hewlett Packard Co.*, 2006 WL 3093685, *5 (N.D.Cal. 2006) ("high speed" representations not actionable where problem plaintiff encountered was not speed, but computer's inability to dissipate heat; plaintiff could not complain that computer was not free from defects when she did not allege defendant *warranted* such); *Plotkin v. Sajahtera, Inc.*, 106 Cal. App. 4th 953, 965-66 (2003) (finding as a matter of law that imposing extra fees for valet parking service did not deceive because ticket disclosed fees).

**B. The Complaint Does Not Describe Actionable Misrepresentations To Support the FAL Claim or Violations of the UCL Fraudulent and Unfairness Prongs.**

In its Order, the Court held that under the FAL claim and the fraud and unfairness prongs of the UCL, a plaintiff need only allege that an ordinary consumer is likely to be deceived. Order, p. 19. Even this minimal standard for pleading a CLRA claim (the third claim) and violations of the UCL's unfairness and fraudulent prongs (the fourth and seventh claims), however, requires the pleading of facts supporting a viable claim of actionable deception. *See Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1557 (2007) ("Absent a duty to disclose, the failure to do so does not support a claim under the fraudulent prong of the UCL."); *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1275 (2006) (same).

Plaintiff's "omission" claim appears to be based on the theory that Cox owed a duty to

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

anticipate the particular purpose *she* had in mind in subscribing, and to describe, with particularity, how its network management practices might affect *that* purpose. But Cox had no such duty, and imposing such a duty would be unworkable. Attempting to comply with such a broad "disclosure" duty would result in interminable and unduly lengthy disclosures. *Buller v. Sutter Health*, 160 Cal. App. 4th 981, 987 (2008) (no duty to disclose customer would pay less if invoice paid immediately rather than 60 or 90 days later).

Cox, moreover, was careful to qualify its representations. For example, the advertisements about the PowerBoost service state that it provides, "*when* available," temporary, faster internet service. (FAC, ¶¶ 27-30.) It used the phrase "up to" or the term "maximum," not "at a minimum." Cox disclosed, in its contract, that speeds would "vary," and it warned that the Service might not be fit for *any* "particular purpose." To the extent Cox owed a disclosure duty, it fulfilled it. *Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 838 (2006) (Honda's failure to disclose that its F22 engine might, in the fullness of time, eventually dislodge the front balancer shaft oil seal and cause an oil leak not likely to deceive the public); *Bardin*, 136 Cal. App. 4th at 1274 (plaintiff's presumption that defendant's representation of providing "quality components" included the exhaust manifolds was not a reasonable expectation by the ordinary public).

At bottom, plaintiff alleges nothing suggesting that Cox promised P2P users like plaintiff that their unique expectations about Cox's residential service (apparently, that their file-sharing would never be limited or constrained for any reason) would be satisfied.[16]

**C. Plaintiff's Derivate UCl "Unlawfulness" Claim Should Be Dismissed.**

Plaintiff's Sixth Claim for Relief alleges that Cox engaged in "unlawful" conduct because it violated the CLRA, the UCL and the CLRA. For the reasons stated above, she has alleged no claims of statutory false advertising, violation of the UCL, or any CLRA violation. No law

---

[16] Aside from the string of conclusory adjectives supporting her claim, Plaintiff now appears to rest her claim of "unfairness" under the UCL on the theory that it was not properly *disclosed.* (FAC, ¶ 84: "Defendants could reduce or eliminate the harm by simply disclosing it.") This claim fails for the reasons stated above; plaintiffs do not allege any *actionable* nondisclosure.

COBLENTZ, PATCH, DUFFY & BASS LLP
ONE FERRY BUILDING, SUITE 200, SAN FRANCISCO, CALIFORNIA 94111-4213
415.391.4800 · FAX 415.989.1663

purports to prohibit an internet service provider from managing traffic on its network. The derivative "unlawfulness" claim has no merit.

## IV. PLAINTIFF'S CLRA CLAIM STILL FALLS TO SATISFY RULE 9(b).

In dismissing the previous complaint, this Court held that plaintiff had not alleged "what about the statements is false or misleading and why it is false and misleading. For example, plaintiff alleges that Cox advertised Premier Tier speeds up to 20 Mbps, but fails to allege how this is false as she does not allege that speed was not obtained by her or other subscribers." Order, p. 16:18-22. In addition, the Court held that plaintiff must allege "justifiable reliance" on the false representations."

As described above, the Amended Complaint still fails to rectify these errors. The CLRA claim should again be dismissed.

## CONCLUSION

The class allegations and definition should be stricken, and the claims for relief dismissed.

DATED: April 2, 2009

Respectfully submitted,

COBLENTZ, PATCH, DUFFY & BASS LLP

By: */s/Richard R. Patch*
RICHARD R. PATCH
Attorneys for Defendant COXCOM, INC., d/b/a COX COMMUNICATIONS, INC.